DILLARD & COFFIN CO. *v.* BELEY COTTON CO., INC., *et al.**

## (*Nashville.* December Term, 1923.)

1. **SALES. On cash sale goods may be recovered, where check dishonored.**

   Where a sale is for cash, and check given in payment is dishonored, vendor can take goods under Uniform Sales Law, section 18, (*Post, pp.* 198-200.)

   Acts cited and construed: Acts 1919, ch. 118.

   Case cited and approved: National Bank v. C., B. & N. R. R., 44 Minn., 224.

2. **SALES. Transferee of buyer to whom title had not passed held not bona-fide purchaser.**

   Where by contract for sale of cotton it was not intended that title should pass, or that cotton should be removed until paid for, buyer to whom cotton was delivered to enable sampling and weighing to determine quality could not acquire title by device of wrongfully warehousing cotton and indorsing nonnegotiable clearance receipt to a bank, in view of Acts 1909, chapter 336, section 41 (a); Acts 1919, chapter 118, section 23 (1), and, cotton not having been paid for, title did not pass to bank under Acts 1919, chapter 118, section 31, and bank's title was not strengthened by subsequent substitution of bill of lading for clearance receipt. (*Post, pp.* 200, 201.)

   Acts cited and construed: Acts 1909, ch. 336, sec. 41; Acts 1919, ch. 118, secs. 23, 31.

---

### FROM SHELBY.

---

*Headnote 1. 35 Cyc, Sales, p. 328; 2. 35 Cyc, Sales, p. 361.

Appeal from the Chancery Court of Shelby County.— HON. F. H. HEISKELL, Judge.

CANADA & WILLIAMS and E. P. RUSSELL, for appellant.

JOHN D. MARTIN, for appellee.

MR. JUSTICE COOK delivered the opinion of the Court.

The Union & Planters' Bank & Trust Company appealed from a decree awarding recovery for the value of cotton claimed by complainant. The parties to the transaction out of which the litigation arose were members of the Memphis Cotton Exchange, and chargeable with notice of its rules, customs, and practices. Beley Cotton Company bought by sample twenty-eight bales of cotton from Dillard & Coffin Company on June 15, 1923. It was then a prevailing custom among the cotton dealers of the locality to sell cotton for cash, and the sale to the Beley Cotton Company was not an exception to the general rule.

Rule 9 of the Cotton Exchange provides:

"The weighing and examining of cotton shall constitute (other than bales rejected) a confirmation and completion of the sale, but it shall not be removed from the place of storage without the consent of the factor until payment has been made. The risk of loss by fire or other accident shall be that of the seller until the buyer has paid for the cotton, as long as it remains in the warehouse of the seller, public or private, but from the time of such payment or removal from the said warehouse the risk of loss shall be that of the buyer.

"When cotton is removed from an uptown warehouse the buyer shall pay for it, whether he has secured compress receipts or not."

On the day of sale Dillard & Coffin Company gave an order to the custodian of their warehouse to deliver Beley Cotton Company twenty-eight bales of cotton designated by a mark of identification of the weight and at the price indicated on the order. The purpose of the delivery was to enable the Beley Cotton Company to sample and weigh the cotton as provided in rule 9. According to the custom of the trade and the understanding between the parties, title was not to pass until Beley Cotton Company paid for the cotton.

The warehouse of Dillard & Coffin Company was a section of the ware rooms of the Memphis Terminal Corporation, and they had use of the Terminal Corporation's courts of inspection, but cotton stored in Dillard & Coffin Company's apartment was not covered by warehouse receipts of the Terminal Corporation. Dillard & Coffin Company stored their own cotton. When the cotton in question was delivered by the custodian of Dillard & Coffin's warehouse to Beley Cotton Company to enable sampling and weighing, the latter company wrongfully deposited it with the Memphis Terminal Corporation, and procured negotiable warehouse receipts. After such delivery the Beley Cotton Company gave written instructions to the Terminal Corporation to deliver the cotton to the railroad company for shipment to Fisher Manufacturing Company at Saundersville, Mass., and the warehouse receipts were surrendered to the Terminal Corporation, and a clearance receipt issued in form as follows:

"Note.—This receipt is nonnegotiable.

"Date 6/20/1923.                                    K. 4544.

"Time 3:30 p. m.

"Received of Beley Cotton Company shipping instructions and clearances covering 28 bales.

"Compress S. O. Mfs.

"Memphis Terminal Corporation.

"M. H. MITCHUM"

Beley Cotton Company, a customer of the Union & Planters' Bank & Trust Company, drew a draft for $4,186 on P. T. Jackson & Co. of Boston, payable to the bank, and attached as collateral the nonnegotiable clearance receipt. The bank bought the draft, and credited Beley's account with the proceeds. Beley Cotton Company bargained for the twenty-eight bales of cotton on June 15, 1923, and on June 22 gave its check to pay for it. Its bank account being overdrawn, and the company being in financial straits, the check was dishonored. Investigation disclosed to Dillard & Coffin Company that the cotton in controversy had been removed from their warehouse, and loaded for shipment, and this suit was comenced to recover it. The bank asserts title by force of the attached clearance receipt as collateral to the draft, and insists that this receipt was an *interim* receipt substituted for a negotiable warehouse receipt until a bill of lading could be issued, and upon issuance of bill of lading covering the particular cotton it was substituted for the clearance receipt. The bill of lading was substituted for the clearance receipt June 22d by act of the bank, and as a means of sustaining its claim after discovering Beley Cotton Company's financial condition. Complainant insists that such substitution conferred no title upon the bank.

The inquiry presented by the record is whether or not the bank acquired title to the cotton by purchase of

the draft with the nonnegotiable clearance receipt attached as collateral. If such transaction did not constitute the bank an innocent purchaser for value, Dillard & Coffin Company could reclaim the cotton from Beley Cotton Company, because the sale was for cash, and, the check given in payment having been dishonored, the vendor could take the goods. *National Bank* v. *Chicago, B. & N. R. R.,* 44 Minn., 224, 46 N. W., 342, 560, 9 L. R. A., 263, 20 Am. St. Rep., 566.; 33 Cyc., p. 323, 324, 328; 24 R. C. L., p. 23.

Chapter 118, Acts of 1919, the Uniform Sales Law, section 18, provides: ''Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the party to the contract intend it to be transferred.

''For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade, and the circumstances of the case.'' 24 R. C. L., p. 15.

By custom among the cotton dealers of Memphis all cotton was to be paid for in cash before delivery to the buyer. Under rule 9 of the Cotton Exchange removal by the purchaser was forbidden until cotton was paid for, unless otherwise understood. This provision of rule 9 was not waived by Dillard & Coffin Company. The delivery to Beley Cotton Company of the twenty-eight bales of cotton was only to enable sampling and weighing to determine if the quality and quantity were as represented. It was not intended that title should pass, or that the cotton should be removed from the court of inspection, or from Dillard & Coffin Company's custody, until Beley

Cotton Company paid for it. Where the sale is for cash on delivery, a delivery is generally considered conditional, and no title vests in the buyer until he has complied with the terms of sale. 24 R. C. L., p. 23, par. 284.

Beley Cotton Company could not acquire title by the device of wrongfully warehousing the cotton and indorsing the nonnegotiable clearance receipt to the bank. Williston on Sales, section 421; chapter 336, section 41(a), Acts of 1909; chapter 118, section 23 (1). Acts of 1919; 35 Cyc. 361.

Dillard & Coffin Company did not know and had no reason to suspect that Beley Cotton Company would thus attempt to assert title to the cotton. It had no knowledge of what was done until after the check was dishonored. Under such circumstances title did not pass to the bank upon delivery of the nonnegotiable clearance receipt. Chapter 118, section 31, Acts 1919. It is not necessary to discuss the effect of the transaction, had a negotiable warehouse receipt been attached as collateral to the draft; it is not material to the disposition of the case. The subsequent substitution of the bill of lading for the clearance receipt could in no wise strengthen the bank's title. The bill of lading was not issued by the direction, express or implied, of the owner of the cotton. The substitution of the bill of lading for the nonnegotiable clearance receipt on which the bank rests title was the act of the bank, and could not strengthen its claim.

The doctrine of estoppel does not apply, because Dillard & Coffin Company had no knowledge or notice of the course pursued by Beley Cotton Company until after

the bank purchased the draft, and it had no reason to suspect the course of dealing that was pursued by the Beley Cotton Company.

We find no error in the decree of the chancellor, and it must be affirmed.