THE STATE v. FLOYD CRUMES and LEVIE CRUMES, Appellants.—3 S. W. (2d) 229.

Division Two, February 18, 1928.

*Creech & Penn* for appellants.

*North T. Gentry,* Attorney-General, and *David P. Janes,* Assistant Attorney-General, for respondent.

WHITE, P. J.—A jury in the Circuit Court of Lincoln County, March 20, 1926, returned a verdict finding the defendant Levie Crumes guilty of the sale of moonshine liquor, and assessed her punishment at nine months in the county jail. They also found Floyd Crumes guilty on the same charge, and assessed his punishment at fourteen months in the county jail.

After judgment and sentence the defendants appealed in due form.

Levie Crumes was the mother of Floyd Crumes, and it appears they were negroes. Evidence for the State showed that H. J. Knight, Deputy Sheriff of Lincoln County, made an arrangement with a young man named Foster to trap the Crumes in the act of selling moonshine liquor. Foster, in pursuance of the plan, asked Floyd Crumes to have his mother bring Foster some whiskey that evening in Winfield, in Lincoln County. Floyd said he would do so, and Foster informed Knight. That evening about six o'clock the Crumes drove into an alley back of a store in Winfield and parked their car. They got out and went into the store. Foster approached Levie Crumes and asked if she had brought the whiskey and she said she had. He told her to go out of the front door and he would meet her in the alley. Knight was concealed where he could observe operations. Foster went back in front of what he called the poultry house, where he could be seen by Knight, and motioned to Floyd Crumes to "bring the moonshine" over there. Floyd got out of the car and had his hand under the left flap of his coat. Foster asked him how much it was for the whiskey. Floyd replied that it was not a full pint and he could have it for a dollar and a quarter. Foster replied that he would take it and handed Floyd a dollar, but said he didn't have the change for the other quarter; that he would get another dollar changed. He started away when Knight stepped up and seized the bottle of liquor in Floyd's hand. While he was doing that Foster disappeared and did not come back.

On cross-examination Foster was asked if he was expecting to pay for the liquor before it was delivered to him, and he answered, "No, sir, not exactly;" that he could give the quarter afterwards. Then this:

"You said you were going to get the change and the darkey stood there holding the liquor waiting for you to get the change; when you started to get the change about that time, why in stepped the sheriff and arrested the darkey and the liquor? A. Yes, sir."

Sheriff Knight corroborated Foster in every detail of how the liquor was handled. He took the whiskey from Crumes and it was never in Foster's possession.

I. The general rule is that a sale of chattels, when not otherwise expressly provided or understood, is a sale for cash; that payment and delivery are concurrent. Until payment is made the buyer has no right of possession and the title does not pass until the chattel is delivered. [35 Cyc. 325; S'. W. F. & C. Co. v. Plant, 45 Mo. 517; S. W. Freight & C. Press Co. v. Stanard, 44 Mo. 71!; Sharp v. Hawkins, 129 Mo. App. 1. c. 85; Hall & Robinson v. Missouri Pacific Railway Co., 50 Mo. App. 179; Lewis v. McMahon & Company, 307 Mo. 1. c. 566; Coleman v. Reynolds, 207 Mo. 1. c. 477; Frazier v. Railroad, 104 Mo. App. 1. c. 359; Coffman v. Fleming, 301 Mo. 319; Lokey v. Rudy-Patrick Seed Co., 285 S. W. 1. c. 1033.]

II. In this case it may be said that technically there was no sale at all, because no valid contract of sale could be made of intoxicating liquor. The statute under which defendants were prosecuted was intended to cover transactions which take the form of a legal sale. As the completion of a legal sale considered in the last paragraph depends upon the intention of the parties, so we must consider the intention of the parties in attempting illegal sales. They are presumed to have known the law. They knew that any contract between them regarding the sale of liquor and payment for it could not be enforced, no matter how definite its terms. They knew also that if the liquor was paid for and not delivered, the purchaser could not recover the possession even if it was agreed that the title should pass. They knew also that if the liquor should be delivered, although not paid for, there was no way by which the seller could get it back, because it was an illegal transaction. Therefore, we must infer that it was the intention of the parties to conclude the sale only by an actual delivery of the liquor. They knew they could not complete the transaction in any other way. They could not make the transfer binding between themselves except by actual delivery. In view of that matter it is evident that the lawmakers, by making it a felony to sell moonshine whiskey, intended to cover only cases where the possession of the liquor was actually transferred from the seller to the buyer. The evil effects of the sale could occur only in case of such transfer of possession. [23 R. C. L. 1323.] In that view of the matter no case was made out.

The judgment accordingly is reversed and the cause remanded. All concur.