## SHILLINGLAW v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7463.

Circuit Court of Appeals, Sixth Circuit.

Oct. 4, 1938.

Llewellyn A. Luce, of Washington, D. C., for petitioner.

A. F. Prescott, Jr., of Washington, D. C. (Robert H. Jackson, Sewall Key, and E. W. Pavenstedt, all of Washington, D. C., on the brief), for respondent.

Before HICKS, SIMONS, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

This is a petition to review an order of the Board of Tax Appeals redetermining a deficiency in petitioner's income taxes for the calendar year 1928 in the amount of $1,230.47. 32 B.T.A. 1235.

The question at issue is whether the petitioner is subject to tax on the sale of capital assets under the provisions of Section 101 of the Revenue Act of 1928, Chap. 852, 45 Stat. 791, 26 U.S.C.A. Section 2101 (a) (b) (c), 26 U.S.C.A. § 101 note. The parties have stipulated that the decision in this case will control the cases of H. H. Campbell, deficiency $6,423.43; W. T. Hale, Jr., deficiency $1,593.33; P. D. Houston, deficiency $1,710.35; Geo. A. Shwab, deficiency $5,208.04; Whitefoord R. Cole, deficiency $5,807.54; H. G. Hill, Sr., deficiency $6,323.39; J. J. Gray, Jr., deficiency $4,184.81; R. W. Hale, deficiency $2,097.34.

The applicable statute provides that a taxpayer other than a corporation, may at his election, in lieu of all other income taxes, pay twelve and one-half percentum of his capital net gain, which is defined as

arising from the sale or exchange of capital assets consummated after December 31, 1931, and such assets are defined to be "property held by the taxpayer for more than two years" excluding stock in trade or that ordinarily included in inventories or property held by the taxpayer primarily for sale in the course of his trade or business.

On January 2, 1926, Rogers Caldwell entered into an executory contract with M. E. Singleton for the purchase of a minimum of 100,540 shares of the total outstanding capital stock of 200,000 shares of the Missouri State Life Insurance Company par value $10 per share. Singleton and his family owned 86,000 shares and were to be paid $100 per share. The 64,540 remaining shares from other stockholders were to be delivered at $75 per share, $2,000,000 of the purchase price to be paid "as of February 1, 1926, with interest adjusted accordingly" and the balance of $5,540,502 over a period of years. Singleton was to have thirty days for the acquisition and delivery of the stock, and Caldwell was to have thirty days for an actuarial examination and valuation of the assets of the Insurance Company with a conditional extension of fifteen days from February 1, 1926, and an additional five days to procure a legal opinion as to title.

A syndicate, of which the taxpayers herein mentioned were members, was formed between January 2 and January 15, 1926, for the purpose of acquiring one-third interest in the contract. Each agreed to pay in a given sum which was later done through the American National Company, which Company, as a member of the syndicate, paid in $250,000.

On January 29, 1926, Singleton and Caldwell selected the Guaranty Trust Company of New York trustee to hold the Missouri State Life stock until the agreed purchase price was paid. It was stated in the trust agreement that Singleton sold to Caldwell, at $100 each, 86,000 shares belonging to himself and family and agreed to deliver to the trustee for $75 a share not less than 14,540, nor more than 64,540 shares belonging to others. The Singleton stock was to be identified by Schedule "A" attached to the trust agreement and that of others by Schedule "B."

It was stated in the agreement that $2,000,000 was to be paid to the trustee on the purchase price on or before February 15, 1926, with 5¼ percent interest from February 1, 1926, and the agreement became effective upon the delivery to the First National Bank of St. Louis, Missouri, of the stock and the payment of $2,000,000.

On January 29 or 30, 1926, Caldwell notified an officer of the American National Company, agent of the syndicate, that the agreement with the Guaranty Trust Company had been executed.

Before February 1, 1926, 100,540 shares of the stock had been deposited with the St. Louis bank. On February 5, 1926, Caldwell entered into a contract with the First National Company, The American National Company and Caldwell & Company assigning to each of them a one-third interest in his contract of purchase.

The three companies jointly agreed to pay $2,100,000 to the First National Bank, St. Louis, agent for the Guaranty Trust Company, trustee, before February 15, 1926. It was further agreed that before subsequent payments on the stock became due, a corporation would be organized and its stock, notes or bonds sold to meet future payments, or that a syndicate would be formed for that purpose.

On February 11, 1926, Singleton agreed to reduce the purchase price of the stock by $500,000 and on February 12, 1926, the Guaranty Trust Company was notified of the reduction and that this sum was to be taken out of the payment to Singleton. It was further agreed that in consideration of this reduction that Caldwell and his associates accepted without qualification Singleton's valuation of the assets of the Missouri State Life Insurance Company.

On February 12, 1926, the American National Company made one-third of the initial payment for the Missouri State Life stock to the First National Bank of St. Louis, and later in the year, the date not shown in the record, issued certificates of interest in its purchase to the taxpayers involved in these proceedings and other members of the syndicate. In 1927, the remainder of the purchase price was paid by the three groups borrowing money from various banks and pledging the stock as collateral. On February 1, 1928, the syndicate of which these taxpayers were members, sold its interest to James and Rogers Caldwell and the taxable income in controversy is from that sale.

The members of the petitioner's syndicate insist they acquired their interest in the Missouri State Life stock on January 29, 1926, the date of the agreement between

Singleton and Caldwell, and the Guaranty Trust Company. The respondent insists the stock was acquired February 12, 1926, the date of the initial payment and was sustained by the Board of Tax Appeals.

■ It is often difficult to ascertain when title passes to personal property. Where the sale is of things specifically identified and set aside by the seller for the fulfillment of his contract, the passing of title is one of intention which is to be ascertained from the terms of the contract and the circumstances surrounding its making.

The contract of January 2, 1926, between Singleton and Caldwell expressly provided the seller was to have thirty days within which to deliver the stock and the buyer was not compelled to accept it in any event if the true surplus of the Missouri State Life Insurance Company was substantially less than $2,000,000 as shown on examination by actuarial accountant made within thirty days. The buyer was entitled to a further period of fifteen days from February 1st to complete the examination and secure a certificate from the accountant as to surplus after which he had the right for a period of five days to procure a legal opinion from his counsel as to the legality of the issuance of the stock and of its sale, and whether or not it was assessable and whether the sale was contrary to Missouri law or the laws of the United States.

These conditions would extend the closing period under the contract to February 13th. The trust agreement was entered into on January 29, 1926, but under its terms, did not become effective until the shares of stock had been deposited and the $2,000,000 paid with five and a half percent interest from February 1, 1926. The syndicate contract permitting participation in the American National group was not executed until February 5, 1926, and the $2,100,000 of the cash purchase was not paid until February 12, 1926.

■ In the absence of a definite agreement to the contrary, where a large sum in cash is to be paid under a contract of sale, it is commonly understood that both parties contemplate that the passing of title and the payment shall be simultaneous. Compare Calcara v. United States, 8 Cir., 53 F.2d 767; Atlantic Life Insurance Co. v. First National Bank, 5 Cir., 62 F.2d 586; Maxwell v. Dunham, 222 Mo.App. 193, 297 S. W. 94; State v. Crumes, 319 Mo. 24, 3 S. W.2d 229; Dillard & Coffin Co. v. Beley Cotton Co., 150 Tenn. 195, 263 S.W. 87; Neilson & Kittle Canning Co. v. Lowe & Co., 149 Tenn. 561, 260 S.W. 142.

■■ Since the ascertainment of the intent of the parties is gathered from the language of the contract and the attendant circumstances, prior decisions are not enlightening because no two contracts are identical and surrounding circumstances vary. Under the facts of this case, we are of the opinion, title to the stock did not pass until the initial payment was made.

The decision of the Board of Tax Appeals is affirmed.