HICKERSON

v.

CON FRAZIER BUICK CO.

No. 21891.

Kansas City Court of Appeals.

Missouri.

Dec. 7, 1953.

Perry M. Cortner and Dwight Beals, Kansas City, for appellant.

Harry I. Schwimmer, Robert B. Vaughan and Walter A. Raymond, Kansas City, for respondent.

CAVE, Presiding Judge.

This is an action for damages resulting from an automobile transaction under circumstances hereinafter detailed. The court sustained defendant's motion for a directed verdict at the close of plaintiff's evidence and entered judgment accordingly, from which plaintiff appeals.

Defendant (respondent) has filed motion to dismiss the appeal because the transcript was not filed within the time allowed by law and without the appellant's having secured an extension of time by this court to file the same. Our records show that on April 7, 1953, on motion of appellant we extended the time to file transcript to April 25, and that the transcript was filed on April 20. The motion is overruled.

The substance of the petition is as follows:

That plaintiff was the administratrix of the estate of Henry C. Thomas, deceased, and defendant was a corporation selling new and used cars; that on or about Octo-

ber 22, 1947, deceased purchased a new Buick automobile from defendant and gave defendant his check *in full payment*; that on same day defendant made, executed and delivered to deceased a certificate of title thereto; that defendant *accepted said check in full payment*; that thereafter the Missouri Commissioner of Vehicles issued a formal certificate of title thereto in the name of deceased; that deceased died October 23, 1947 and immediately thereafter the defendant unlawfully, wrongfully, wilfully, intentionally and maliciously took the automobile from the premises of deceased without the consent or permission of any legal representative of deceased and converted it to defendant's own use; that defendant failed to cash the check during the lifetime of deceased and refused to accept payment thereof from the administratrix; that administratrix made demand on defendant for return of the automobile and defendant refused to return it or give possession to plaintiff; that said automobile was an asset of the estate and it was her duty to sell the car for the highest possible price and had it sold for $500 above the purchase price but could not do so because of the wrongful, unlawful, intentional, wilful and malicious acts of the defendant; that plaintiff was actually damaged $500 and the usual prayer for $2500 punitive damages.

The answer admitted plaintiff was the administratrix of the estate of deceased, and that it was a corporation selling new and used cars, and denied all other allegations. As a bar to plaintiff's cause of action the answer alleged that the matters, facts, questions and issues were decided adversely to plaintiff in a former proceeding instituted by plaintiff against defendant in the probate court, wherein that court held that the deceased, nor his estate, nor the plaintiff ever, at any time, had title to the automobile in question, and that the order of the probate court was res judicata of the issues in the present suit.

A general outline of the evidence is that plaintiff's decedent (Henry C. Thomas) on October 22, 1947, contracted to buy an auto-

mobile from defendant, a retail dealer of new Buick automobiles; that decedent issued his checks for the full purchase price of the automobile and the other expenses incidental to such transaction; that defendant issued its bill of sale for the Buick, and assisted decedent in preparing the application papers for a state certificate of title and delivered them, together with the automobile, to decedent. This occurred about 11:00 a. m. October 22, and about 4:00 p. m. on the following day, and before the checks were deposited, Henry C. Thomas died. Immediately thereafter and on the same day, defendant's representative went to decedent's home and tendered the checks to his sister (who is plaintiff herein), and demanded a return of the automobile. She refused to accept the checks but the agent took the automobile over her protest. Later defendant deposited the checks but payment was refused because the drawer was deceased. Decedent mailed the application for the certificate of title before he died and it was issued in his name by the Director of Revenue on November 12, 1947.

After plaintiff was appointed administratrix she applied to the probate court for authority to use money of the estate to pay for the automobile. The court denied her application and she appealed to the circuit court where, in due time, she *dismissed that case* or *proceeding* and brought this suit.

██ Defendant contends that the decision of the probate court is final and binding on the plaintiff and that the present suit should be abated. The argument in support of this proposition is based on the general rule that the probate court has "superintending control over the acts and doings of all persons handling estates in the court." State ex rel. Lefholz v. McCracken, 231 Mo.App. 870, 95 S.W.2d 1239, 1244; Rollins v. Shaner, 316 Mo. 953, 292 S.W. 419, 421. That general rule has no application to the present question. Plaintiff appealed from the probate court order and then *dismissed that proceeding* in the circuit court. We think that *dismissal* had the effect of vacating the judgment or order of

the probate court. Chapter 467 RSMo 1949, V.A.M.S., governs appeals from probate courts and Section 467.090 provides that when the transcript is filed in the circuit court "the court shall be possessed of the cause, and shall proceed to hear, try and determine the same anew, * * *." This section is substantially the same as Section 512.270 governing appeals from the magistrate court. Since the early case of Turner v. Northcut, 9 Mo. 251, it has been held that when a *plaintiff* appeals from an adverse judgment in the justice of the peace (magistrate) court and dismisses his *action* in the circuit court, such dismissal has the effect of vacating the judgment of the justice. In Howard v. Strode, 128 Mo. App. 482, 495, 106 S.W. 116, 120, which was an appeal from the probate court, it is said: "If we are governed by decisions relating to appeals from justices of the peace, it does not alter the matter that there had been a trial in the probate court and a judgment there. On appeal from the probate court a case is heard in the circuit court de novo the same as on an appeal from a justice of the peace. Rev.St.1899, § 285. But, on appeal from the judgment of a justice to the circuit court, a plaintiff may dismiss his action in the latter court, thereby vacating and annulling the judgment of the justice. * * * It seems to be the law that the practice on appeal from a probate court is, *mutatis mutandis,* like that on appeal from a justice." See also Leonard v. Security Bldg. Co., 179 Mo.App. 480, 162 S.W. 685; Lee v. Kaiser, 80 Mo. 431.

It follows that the proceedings in the probate court cannot be considered res judicata of the issues in the present suit.

Plaintiff (appellant) contends that the court erred in sustaining defendant's motion for a directed verdict because, under the facts, deceased's check was in law paid and title to the automobile passed to him as a matter of law. This contention is founded on certain undisputed evidence to the effect that the check was delivered to defendant about 11:00 a. m., October 22, drawn on a bank located within the same city as defendant's office and delivered to defendant at that time; that said bank did not close for business until 2:00 p. m. of that day; that the drawer of the check did not die until 4:00 p. m. the following day (Thursday); therefore the failure of defendant to present the check for payment during banking hours of the day of its delivery or on the next day after its delivery operated as payment of the indebtedness for which it was given.

Plaintiff relies on Section 401.186 RSMo 1949, V.A.M.S., and Farm and Home Savings and Loan Ass'n v. Stubbs, 231 Mo. App. 87, 98 S.W.2d 320, 335; and Maryland Casualty Co. v. Dobbin, Mo.App., 108 S.W.2d 166. Section 401.186 provides: "A check must be presented for payment within a reasonable time after issue *or the drawer will be discharged from liability thereon to the extent of the loss caused by the delay."* (Italics ours.) In the Stubbs case, supra, the court said, 98 S.W.2d at page 335: "At common law and under the law as declared by the courts in Missouri, the rule appears established that, where a check is delivered by the drawer to the payee in the same place where the bank on which it is drawn is located, a reasonable time for its presentment, where no cause for delay appears, is within the banking hours on the day of its delivery or on the next day after its delivery." Citing many cases. In that same case it was held that the acceptance by a creditor from his debtor of a check *as other than absolute payment* implies an undertaking on the part of the creditor to use due diligence in presenting the check for payment and a failure to do so will operate "as payment of the indebtedness for which it was given, *at least to the extent of the drawer's loss,* * * *".* (Italics ours). Thus by the very terms of the statute and cases construing it, delay in presenting a check for payment does not, alone, discharge the liability of the drawer, but only discharges him to the extent of the loss which he may suffer by reason of the delay in presenting the check for payment. Missouri Pac. Ry. Co. v. H. M. Brown Coal Co., 226 Mo.App. 1038, 48 S.W.2d 86, 87; Wooldridge v. Bryan, 307 Mo. 234, 244, 270 S.W. 658.

Consequently, defendant's *delay* in presenting the check for payment did not liquidate deceased's debt and did not serve to pass title to the automobile, as a matter of law. The present action does not seek damages because of *delay* in presenting the check for payment. Title passed, if at all, because of facts we now consider. In 1947 and for some years prior, new automobiles had been scarce and deceased had applied to defendant for the purchase of a new car about two years before the date of this sale; that on October 22, 1947 defendant notified deceased that "his car was ready and he could pick it up any time that day, * * *"; that deceased went to defendant's place of business, examined the car, agreed on the price and delivered his check for the full amount; that defendant delivered to him a bill of sale and prepared an application for a certificate of title to be issued by the state, which application deceased signed at that time; that when the check was delivered defendant's salesman said, "Now I am going to get an O.K. on these checks before I give you the papers"; that he left the office and called the bank and upon his return gave deceased the bill of sale and application for a certificate of title and also delivered the car which deceased's sister drove away; that the next morning deceased mailed the application for a title certificate to the Department of Revenue in Jefferson City, and a certificate of title was issued in deceased's name on November 12, 1947, long after deceased had died on October 23. At the time deceased gave defendant his check for the amount of the purchase price of the car he also gave defendant a check "for insurance" but the evidence does not disclose the kind of insurance, or that any policy was issued.

Immediately after deceased's death an agent of the defendant came to his home and demanded the return of the car; he stated to deceased's sister (plaintiff), "We sold the car to him and I have the checks right here, which we have not sent through the bank yet * * *. If you let me have the keys and get me the papers we gave him at the time of the purchase, the whole deal will be cancelled". The sister refused to deliver the keys and after some discussion the agent took them from a table and drove the car to defendant's place of business. This occurred on Thursday. On the following Monday plaintiff went to see Con Frazier, president of defendant corporation, who stated to her that he "didn't know who the car belonged to. You have got our bill of sale, or our papers, and I have got your checks. I didn't put them through the bank because I knew they were good. There is no argument about that, I knew they were all right". He requested plaintiff to see his attorney which she did. Some time thereafter defendant deposited the checks and payment was refused because "drawer was deceased".

Plaintiff read from the deposition of Con Frazier this question and answer:

"Q. As far as you were concerned, at the time you received Mr. Thomas' checks, that was a closed deal, wasn't it? A. Yes."

Defendant's counsel then read questions he asked Frazier in the deposition:

"Q. You accepted these checks in lieu of cash, providing the checks cleared and were paid? A. Yes, sir.

"Q. When you accepted the checks, it was a closed deal assuming that the checks were going to be paid? A. Yes, sir."

■■ The vital question in this case is: Does plaintiff's evidence (defendant offered none) clearly establish that defendant *agreed* to accept deceased's check as payment of the purchase price of the automobile? It is undisputed that this was a *cash sale*. Certain general rules controlling transactions of this kind are well settled in this state. They are; that a check is not payment of a debt unless by *express contract* it is so received; that there arises no presumption that a creditor takes a check in absolute payment from the mere fact that he accepts it from his debtor, in fact the presumption is just the contrary; that the evidence must *clearly establish* that the seller agreed to accept the check as payment; and the burden is on the debtor to so prove by clear and cogent evidence. Ret-

tinghouse v. Krey Packing Co., Mo.App., 200 S.W.2d 584, 586; Griffin v. Priest, Mo.App., 137 S.W.2d 685; Lewis v. McMahon & Co., 307 Mo. 552, 271 S.W. 779; Groomer v. McMillan, 143 Mo.App. 612, 128 S.W. 285; Goddard Grocery Co. v. Freedman, Mo.App., 127 S.W.2d 759; Pflanz v. Pflanz, 237 Mo.App. 873, 177 S.W. 2d 631; State v. Crumes, 319 Mo. 24, 3 S.W. 2d 229; Armstrong v. First Nat. Bank, Mo. App., 195 S.W. 562; Skinner & Kennedy Stationery Co. v. Lammert Furn. Co., 182 Mo. App. 549, 166 S.W. 1079; 31 A.L.R. loc. cit. 579; 46 Am.Jur. 613.

■ With these general principles in mind we consider the salient bits of evidence touching the question under consideration. It is urged that defendant issued its bill of sale for the automobile and delivered it to deceased. That is true, but Section 301.200(2) RSMo 1949, V.A.M.S., provides that a *dealer shall* issue and deliver to the purchaser of a *new car a bill of sale* in accordance with the forms prescribed by the director of revenue and that when such bill of sale is presented to the director "a certificate of ownership shall be issued". Thus the issuance of the bill of sale was a mere compliance with that statutory provision and is of little or no probative value to establish whether defendant accepted the check as payment. The sale and transfer of title to motor vehicles is rather strictly regulated by statute (Chap. 301 RSMo 1949, V.A.M.S.) and in this regard is unlike the sale of ordinary chattels. The certificate of title issued by the department of revenue long after Thomas was deceased was void and added nothing to the right of his estate to retain the car; Calloway Bank v. Ellis, 215 Mo.App. 72, 238 S.W. 844, 846; Stolle v. Stolle, Mo.Sup., 66 S.W.2d 912; and is no evidence that defendant accepted the check in lieu of cash.

■ It is also urged that the fact that defendant's agent telephoned the bank to ascertain whether decedent's account was sufficient to pay the check when presented is sufficient, together with the other evidence, to meet her burden of proof. We do not think so. Under our modern business methods most sales involving substantial amounts are made by giving checks in lieu of cash and, as said in Groomer v. McMillan, supra, 143 Mo.App. at page 615, 128 S.W. at page 286: "'Where payment is made by check drawn by a debtor on his banker, this is merely a mode of making a cash payment, and not giving or accepting a security. Such payment is only conditional, or a means of obtaining the money. * * and if it is dishonored there is no accord and satisfaction of the debt.'" In 70 C.J.S., Payment, § 24, p. 233 the rule is stated thus: "The delivery to, or acceptance by, the creditor of his debtor's check, although for convenience often treated as the passage of money, it is not payment, * * * in the absence of any agreement or consent to receive it as payment, or any laches or want of diligence on the part of the creditor, * * *. In such case, the original debt is not paid or discharged unless, and until, the check itself is actually paid on due presentment, * * *." In some states it is held that even though the check is certified before delivery it is not payment unless expressly so agreed. See 70 C.J.S., supra. We need not go that far in this case.

Plaintiff cites Shearer Motor Co. v. Burmeister, Mo.App., 216 S.W.2d 955. We have examined that opinion and find that the facts and issues under consideration make it inapplicable to the instant case.

■ It is our conclusion that the evidence fails to clearly establish that the title to the automobile passed to deceased and therefore it never became an asset of his estate, and a suit for conversion will not lie.

The judgment is affirmed.

All concur.