G. F. C. CORPORATION, a Corporation, Plaintiff-Respondent,

v.

Joseph J. NESSER, Defendant-Appellant.

No. 43908.

Supreme Court of Missouri.

Division No. 1.

Nov. 8, 1954.

Motion for Rehearing or to Transfer to Court en Banc Denied Dec. 13, 1954.

Ludwig Mayer, Clayton, for appellant. Charles M. Shaw and Wayne C. Smith, Jr., Clayton, of counsel.

Thomas J. Guilfoil, Thomas F. Manion, St. Louis, for respondent.

COIL, Commissioner.

Plaintiff-respondent recovered a judgment for $12,020 in its action against defendant-appellant on a guaranty contract. The case was tried by the court without a jury. Defendant contends that the trial court erred in rendering any judgment for plaintiff and, in any event, in the amount of $12,020 because: the principal debtor had paid plaintiff the amount due under the guaranty contract; plaintiff released security which it had received for the debt and thereby had released the guarantor; and that, in any event, the judgment should have been $5,520 less than it was by reason of the guarantor having failed to ap-

prove certain transactions between plaintiff and the principal debtor in accordance with the terms of the contract.

The contract, dated November 3, 1950, signed by plaintiff's vice president and by defendant Nesser, recited that a dispute had arisen between M. M. Blives, doing business as Milt Blives Motor Company, and plaintiff, G. F. C. Corporation, as to the account between them; and that, to induce plaintiff to continue business with M. M. Blives, defendant Joseph J. Nesser agreed to guarantee Blives' account with plaintiff in the respects noted in the contract. The parties agree that only these two paragraphs of the guaranty contract are applicable to the questions here:

"1. That G. F. C. Corporation will leave on the lot of M. M. Blives, d/b/a Milt Blives Motor Company located at 7125 Manchester Ave., St. Louis, Missouri, the automobiles that they now have on open floor plan, as shown on the attached list, and will continue from time to time to floor plan certain other automobiles for said M. M. Blives, if and when said transactions are approved by Joseph J. Nesser.

"2. In consideration of above, Joseph J. Nesser does hereby agree and guarantee to G. F. C. Corporation, that none of the automobiles in question, and listed on the attached list or any other automobiles subsequently floor planned to G. F. C. Corporation by M. M. Blives, with the approval of J. J. Nesser, will be sold or otherwise disposed of by M. M. Blives, unless he shall immediately upon such sale or disposition, pay off the loan of G. F. C. Corporation on such car or cars, and if said M. M. Blives shall not immediately pay off said loan or loans the said Joseph J. Nesser does personally guarantee the payment of same, and will make immediate payment of same on notifications."

The automobiles described on the list attached to the contract mentioned in paragraph 1 above are not here involved. The presently applicable provision of paragraph 1 is that plaintiff agreed to "floor plan" additional automobiles for Blives "if and when said transactions are approved by Joseph J. Nesser." From the evidence, we understand that "floor planning" is this: An automobile dealer (in this instance, a used car dealer), after having purchased an automobile, executes a note (in this instance, to G. F. C.), in an agreed amount, secured by a chattel mortgage on the automobile he has purchased. Upon delivery to the finance company of the note, chattel mortgage, and sometimes the automobile title, the company delivers its check to the dealer for the amount of the note. When the dealer desires to sell, or does sell, the automobile, he pays the finance company the amount of the note, with interest, whereupon the note, chattel mortgage, and the title, if any, are delivered to the dealer. Plaintiff's evidence was that in "floor plan" transactions, it may or may not receive the title to the involved automobile at the time it is mortgaged.

From November 3, 1950, to April 13, 1951, plaintiff loaned Blives $10,000 to $15,000 under the instant "floor plan" arrangement (exclusive of the $12,020 here involved), which $10,000 to $15,000 was apparently repaid without incident. The $12,020 here involved was loaned to Blives on various dates from January 16 through April 12, 1951, on eleven automobiles, which were among automobiles covered by seven notes attached to and secured by seven chattel mortgages. Across the faces of four of the notes was written "OK J. Nesser" or "J. Nesser". Across the faces of three of the notes was written "O. K. Jos Nesser Mtrs Inc., H. G. Tiffany" or "Jos Nesser Mtr Inc., H. G. Tiffany". It is undisputed that the "J. Nesser" appearing on the four notes was the signature of defendant Joseph Nesser, and that such signatures appearing across the faces of the four notes constituted approvals of the proposed transactions by defendant Nesser as provided for in the guaranty contract.

On November 3, 1950 (the date of the contract), defendant Nesser told Mr. H. T. Bruce, plaintiff's district manager, that Tiffany (to whom Nesser had introduced Bruce the day before) was Nesser's manager and was to be on Blives' lot to "police it" and see that the "contract was car-

ried out"; and, in substance, that either Nesser or Tiffany would "okay" the chattel mortgages and notes to be executed and delivered by Blives to plaintiff, and that either signature would signify Nesser's approval under the terms of the guaranty contract.

On April 12 and 13, 1951, Blives delivered his personal checks to plaintiff in various amounts totaling $11,100, in ostensible payment of the amounts due on the various automobiles which were covered by the seven notes and chattel mortgages, except one which was mortgaged for $920. Upon receipt of the checks, plaintiff delivered the titles to all the involved automobiles except the one for which no check was delivered. Thereafter, and on the same days, plaintiff's ledger sheets, which reflected the involved transactions, were posted with a credit to Blives in the amount of each individual check, and the "balance" column on each ledger sheet as to each of the involved automobiles (except the one mortgaged for $920), was marked "O". All of these checks were returned unpaid. Plaintiff's evidence was that Blives stopped payment on them. Consequently, on various dates between April 13 and April 19, 1951, plaintiff's ledger sheets were corrected so as to reflect the reinstatement of the various balances which had been ostensibly liquidated by the checks.

Plaintiff's evidence was further that a search was made by plaintiff for each of the automobiles involved and that none of them were found. Plaintiff's evidence did not definitely show that the involved automobiles had been "sold or otherwise disposed of by M. M. Blives." It appears, however, that neither at the trial nor here has defendant contended that the automobiles involved were not "sold or otherwise disposed of by M. M. Blives." On the contrary, the reasonable inference from the record is that the parties tacitly agreed that the automobiles (including the one mortgaged for $920) had been "sold or otherwise disposed of" by Blives. Plaintiff made demand on Nesser for $12,020 under the terms of the guaranty contract.

Defendant contends that the delivery of the checks by Blives, to plaintiff constituted payment of all amounts due by Blives, and that, therefore, defendant Nesser was not liable on the guaranty contract. (No reference is made in defendant's argument to the one involved automobile which was mortgaged for $920 and for which no check was delivered by Blives to plaintiff. Of course, defendant's contention as to payment by delivery of checks would not apply to the $920 transaction. Our view of the case, however, makes it unnecessary to consider this $920 transaction as a separate and distinct item.) In Hickerson v. Con' Frazier Buick Co., Mo.App., 264 S.W.2d 29, 33[5, 6], it was said, "a check is not payment of a debt unless by *express contract* it is so received; * * * there arises no presumption that a creditor takes a check in absolute payment from the mere fact that he accepts it from his debtor, in fact the presumption is just the contrary; * * * the evidence must *clearly establish* that the seller agreed to accept the check as payment; and the burden is on the debtor to so prove by clear and cogent evidence. Rettinghouse v. Krey Packing Co., Mo.App., 200 S.W.2d 584, 586; Griffin v. Priest, Mo.App., 137 S.W.2d 685; Lewis v. [James] McMahon & Co., 307 Mo. 552, 271 S.W. 779; Groomer v. McMillan, 143 Mo.App. 612, 128 S. W. 285; Goddard Grocer Co. v. Freedman, Mo.App., 127 S.W.2d 759; Pflanz v. Pflanz, 237 Mo.App. 873, 177 S.W.2d 631; State v. Crumes, 319 Mo. 24, 3 S.W.2d 229; Armstrong v. First Nat. Bank, Mo. App., 195 S.W. 562; Skinner & Kennedy Stationery Co. v. Lammert Furn. Co., 182 Mo.App. 549, 166 S.W. 1079; 31 A.L.R. loc. cit. 579; 46 Am.Jur. 613."

■ There was no express written agreement that Blives' checks were to be received as absolute payment of the amounts he owed plaintiff. True, an express agreement to receive a check as payment need not necessarily be a written agreement. And the express agreement may be proved by facts and circumstances in evidence which clearly show that it was the intention of the parties that a check

was to constitute absolute payment of a debt. Griffin v. Priest, Mo.App., 137 S.W. 2d 685, 687[1, 2]. However, the only facts and circumstances in this record upon which defendant may rely to sustain his contention that Blives' checks constituted payment are: the manner in which plaintiff handled its ledger sheets, the testimony of one of plaintiff's officers that it was customary in "floor plan" financing to accept the checks of dealers in payment of notes due, and the fact that, upon receipt of Blives' checks, plaintiff, in accordance with usual practice, released the titles to all but one of the automobiles.

■■ We are of the opinion that these facts do not constitute clear and convincing evidence of an express agreement that Blives' checks, irrespective of whether they were paid by the bank, were to be accepted by plaintiff as absolute payment of Blives' indebtedness. The ledger sheet entries were nothing more than bookkeeping devices to reflect the status of Blives' account. But ordinarily an entry indicating an account has been paid, when the thing tendered in payment was a check, is necessarily conditional upon the check being paid. The fact that the ledger accounts were first credited with the amount of the checks received, then debited when the checks were returned unpaid, is not indicative of an intention to accept the checks as absolute payment. On the contrary, such procedure tends to negative the idea that there was an express agreement that the checks were to constitute payment. Neither did the fact, standing alone or in combination with all the facts and circumstances in evidence, that plaintiff released the titles at the time the checks were received constitute convincing evidence of an agreement to accept the checks as payment. The only evidence in this regard was that it was customary for plaintiff, and other finance companies engaging in similar transactions, to release titles to automobiles upon receipt of personal checks from dealers; and the testimony of the defendant to the effect that he did not know that plaintiff had returned the titles to Blives until the transactions were completed. And

while, as noted, one of plaintiff's officers testified that it was customary to receive dealers' checks "in payment" of notes due, we think that the clear meaning of such testimony was that the check was accepted as a means of payment and not as payment in the sense that the delivery and acceptance of the check extinguished the debt. Griffin v. Priest, supra, 137 S.W.2d 688 [3, 4].

We hold, therefore, that Blives did not pay the notes by delivering to plaintiff his checks upon which he stopped payment and which were never paid by the bank.

■ Defendant next contends that, as to all the automobile loans here involved (except the $920 loan on one automobile), plaintiff released the titles to Blives upon receipt of Blives' personal checks and thereby released security for the debt which plaintiff had acquired, and thereby released defendant-guarantor from liability under the guaranty contract. Defendant relies on Priest v. Watson, 75 Mo. 310, where, at page 315, the court said: "No citation of authorities is needed to establish the proposition that a surety is entitled to any specific security for the payment of the debt which the principal debtor may have given the creditor, or which by operation of law the creditor may have acquired, and if the creditor releases or destroys voluntarily such security, that the surety is discharged to the extent that such specific security would have gone to pay the debt." We deem it unnecessary in this case to determine either the extent, if any, to which the automobile titles were security for the debt from Blives to plaintiff, or whether there is any evidence or reasonable inference therefrom as to the extent to which plaintiff's retention of the titles would have prevented plaintiff's loss. This, for the reason that the language of paragraph 2 of the contract, above noted, demonstrates that it was contemplated by the parties that the mortgaged automobiles would be sold or disposed of by Blives prior to payment to plaintiff of the amount due on each automobile. Paragraph 2 provides in part: [No] "other automobiles

subsequently floor planned to G. F. C. Corporation by M. M. Blives, with the approval of J. J. Nesser, will be sold or otherwise disposed of by M. M. Blives, unless he shall *immediately upon such sale or disposition,* pay off the loan to G. F. C. Corporation on such car or cars, * * *." (Italics ours.) The above-quoted language clearly indicates that the parties contemplated the sale of the automobiles before the indebtedness was to be paid to the plaintiff. Blives could not consummate a valid sale without delivery to a purchaser of a properly reassigned certificate of ownership. Section 301.200 RSMo 1949, V.A. M.S. It would appear, therefore, that the parties contemplated by the terms of the contract that the titles would be released to Blives prior to payment. Thus, in view of the foregoing, and in the absence of any provision in the contract specifically describing the detailed procedure to be followed in the particular "floor plan" transactions contemplated; in the absence of any specific provision in the contract relating to when and under what circumstances titles were to be received, held, and released by plaintiff; and in view of the evidence that titles are customarily released when an automobile dealer delivers his personal check to companies conducting "floor plan" business; we must conclude that the release of titles by plaintiff to Blives was not contrary to, but was in accord with, the provisions of the contract, and that the delivery of the titles to Blives did not constitute a voluntary and unauthorized release by plaintiff of security for the debt.

Defendant contends that the three notes on which, as heretofore noted, was written "O. K. Jos Nesser Mtrs Inc., H. G. Tiffany" or "Jos Nesser Mtr Inc., H. G. Tiffany" were not approved by defendant Nesser and that he is, therefore, not liable for the $5,520 evidenced by these three notes. Defendant reminds us that a guarantor is liable only in accordance with the exact terms of the contract of guaranty; that if there has been an alteration in the terms of the contract between the creditor and the principal debtor without the consent of the guarantor, or if a creditor interferes with the performance of the contract by the principal debtor by authorizing or directing the principal to perform the contract in a manner materially different from that provided for by its terms without the consent or approval of the guarantor, the guarantor is not liable on his guaranty contract. Defendant's cited cases establish these propositions, but the question here does not involve the application of these principles. This, because there is no evidence in this case of any change or alteration in the terms and provisions of any contract or arrangement between plaintiff and Blives, or of any change or alteration in the terms of the guaranty contract, or of any interference by plaintiff with performance by Blives, or of any direction by plaintiff to Blives to perform his obligations under the "floor plan" transactions in a manner different from that contemplated by the parties.

The question here is whether the three "floor plan" transactions referred to were approved by J. J. Nesser in accordance with the terms of paragraphs 1 and 2 of the guaranty contract. Paragraph 1 provided that plaintiff would continue to "floor plan" automobiles for Blives "if and when said transactions are approved by Joseph J. Nesser." Paragraph 2 provided that none of the automobiles subsequently "floor planned" to plaintiff by Blives "with the approval of J. J. Nesser" would be sold or otherwise disposed of by Blives unless he paid plaintiff the amount of the loan or loans on such automobile. The guaranty contract did not provide the manner in which, or the method by which, Nesser was to approve the transactions. All that was required was Nesser's approval. So that the question does not depend, as defendant contends, on the fact that Jos. Nesser Motors, Inc. was a corporate person different from J. J. Nesser, the individual, or upon defendant's testimony that Tiffany worked for the corporation but did not work for Nesser, the individual. The question is whether the words used, including the signature of Tiffany, constituted an approval by J. J. Nesser of the three "floor plan" transactions.

We have noted that J. J. Nesser, the individual, told Bruce, plaintiff's district manager, that Tiffany, Nesser's manager, was to be stationed at Blives' used car lot to "police it" and see that the "contract was carried out", and that either he (Nesser) or Tiffany would approve Blives' notes and chattel mortgages given in connection with "floor plan" transactions.

Defendant Joseph Nesser testified. He did not deny the conversation wherein he informed Bruce of Tiffany's authority to approve transactions on Nesser's behalf. Nesser testified only that Tiffany worked for the Nesser corporation and not for Nesser as an individual. But the fact that Tiffany was another's employee could not affect the validity of an approval by Tiffany under Nesser's specific authorization. The real question resolves itself to this: Does the fact that the words "Jos Nesser Mtrs Inc" were placed above the signature of H. G. Tiffany conclusively show that Tiffany's signature was an approval of the corporation only and did not constitute approval by Nesser, the individual? We think not. There is no suggestion of any reason for Tiffany to approve the "floor plan" transactions except as a result of Nesser's instructions to him, which, in turn, resulted solely from the existence of the guaranty contract. That is to say, the only reasons for Tiffany's presence at Blives' used car establishment were to approve "floor plan" transactions on behalf of Nesser, the individual, and to see that Blives liquidated his obligations to plaintiff. In other words, from Nesser's standpoint, Tiffany's sole function was to protect Nesser, the individual, under the guaranty contract. Jos. Nesser Motors, Inc. was not involved in the "floor plan" transactions between plaintiff and Blives. The reasonable inference is that Tiffany, when he placed his signature on the three notes, was acting under Nesser's authorization to him to approve Blives' proposed "floor plan" transactions with plaintiff; and that Tiffany intended that his signature evidenced his judgment that the particular transactions should be approved in the sense that the transactions were such that they

would not jeopardize the position of the guarantor, whether the guarantor was Nesser, the individual, or the Nesser corporation. We are convinced that the signatures of Tiffany, appearing, as they did, in the same relative places on the notes as were the signatures of Nesser on the notes that he approved himself, constituted approvals by Nesser, the individual, within the meaning of the guaranty contract, and that, under all the circumstances, the words "Jos Nesser Mtrs Inc" were surplusage.

Our examination of the record in this case causes us to conclude that the trial court correctly awarded plaintiff a $12,020 judgment. That judgment is affirmed.

VAN OSDOL and LOZIER, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.