William Joseph GILL (Plaintiff), Appellant,

v.

MERCANTILE TRUST COMPANY, a Corporation (Defendant), Respondent.

No. 30587.

St. Louis Court of Appeals.

Missouri.

June 13, 1961.

Motion for Rehearing or to Transfer to Supreme Court Denied July 11, 1961.

James Glenn, Macon, Thomas R. McGinnis, St. Louis, for appellant.

Thompson, Mitchell, Douglas & Neill, John O. Hichew, Robert Neill, St. Louis, for respondent.

WOLFE, Judge.

This comes to the writer upon reassignment. It is an action predicated upon the theory that there was a wrongful conversion of plaintiff's automobile by the defendant corporation. The trial was to a jury, which returned a verdict in favor of the plaintiff for $300 actual damages and $5,000 punitive damages. The defendant's motion for a new trial was sustained, and the plaintiff prosecutes this appeal.

The petition alleged that the plaintiff was the owner of an automobile and that the defendant's agents illegally and wrongfully converted the automobile to the defendant's use, and drove it from the City of Hunnewell, Missouri, in Shelby County, to the City of St. Louis, Missouri. It was also alleged that the plaintiff was compelled to pay $63 before the car was returned to him by the defendant. It was alleged that all of this was willful, intentional, and malicious. The damages sought were for impaired credit, embarrassment, humiliation, and the $63 paid to recover the car.

The defendant's answer was that the automobile was taken under the provisions of a chattel mortgage it held on the car, and that at the time of the taking plaintiff was in default. In reply to this plaintiff stated that on July 2, 1958, the time of the taking, he was not in default and that all payments due under the mortgage had been made.

· The facts of the matter are that the plaintiff, Mr. Gill, bought a 1957 Chevrolet automobile from Jantzen Chevrolet Company on November 7, 1956. His dealings were with a Mr. Coyne of that company, and the deal was concluded by Gill being given an allowance on a trade-in and taking from Gill a note and chattel mortgage for the balance of the purchase price. Gill testified that he signed the mortgage in blank. He received a slip of paper from Coyne showing the amount of the payments, and in this respect the note and mortgage were as he had suggested. There were to be three payments of $573.48 each.

Gill operated two self-propelled combines as a business. His income from these came in around June and December. He testified that he told Coyne that he wanted to have the payments the same as they had been on a truck purchased previously, and that such payments had been in June, December, and June. The date of the payments as provided for in the note were May 7, 1957, November 7, 1957, and May 7, 1958. The note was payable to Jantzen Chevrolet Company and provided that payments should be made at the office of the Mercantile Trust Company. The note was endorsed by the Jantzen Company over to the defendant Trust Company, with chattel mortgage attached. When Gill later saw the dates upon which payments were to be made, he talked to Mr. Coyne about it when he took his car in for the thousand mile check. He never talked to any one at the Mercantile Trust Company about changing the note.

The first installment of the note which was to be paid on May 7, 1957 was not paid at that time. The Mercantile Trust Company notified Gill by letter that the payment was past due, and Gill asked Mr. Coyne to get in touch with the Trust Company and arrange for a sixty-day extension of time. This was done, and on June 3, 1957 Gill paid interest for the time extended. The first payment was then due on July 7, 1957, and notice by the Trust Company was sent to Gill on July 15 and July 19 that the payment had not been made. On July 25 the Trust Company informed Gill by letter that they would repossess the automobile unless the payment was made. Gill made the first payment by bank draft on July 31, 1957.

The second payment due on November 7 of the same year was not paid on the due date. Two more letters were sent to Gill. On January 15, 1958 a collector from the Mercantile Trust Company called upon Gill and obtained a check for the second payment, plus interest for the time that the payment had been in arrears.

The third and final payment, which gives rise to this controversy, was not paid upon the date that it fell due, which was May 7, 1958. The plaintiff did not seek an extension of time. Some one from the Trust Company telephoned Gill's home on June 20. Gill was not at home, but his wife answered the phone and was informed that the Trust Company wanted the last payment and would not further extend the time for it. She told her husband about the conversation, and on June 28 he wrote a check for the payment on the Bank of Hunnewell and mailed it the same day to the Mercantile Trust Company. The 28th of June was a Saturday. At that time Gill did not have sufficient funds in the Hunnewell Bank, on which the check was drawn, to meet the check.

The defendant's evidence as it related to the receipt of the check was that checks mailed, as this was, without being directed to the attention of any one, went to the Mail Department, which was located in a building other than the one in which the Loan Department was located. After it was received by the Mail Department the check was sent with the loan coupon accompanying it to the Installment Loan Department. In this department the ledger cards of the borrowers were posted each evening with the payments received, and this work was done by part-time help who worked during the evening hours from five to ten o'clock.

The defendant's evidence as it related to the installment accounts was that each account had a ledger card which was kept in the filing cabinet of the bookkeeping department of the Installment Loan Department. When an account became delinquent, the card of the borrower was withdrawn from the file and given to some one to collect the amount due. Gill's card had been withdrawn and was given to a Mr. Caldwell with instructions to turn the account over to the A. A. A. Credit Company for repossession of the car if the account was not paid. Caldwell checked the card

and the payment coupons on June 30 and again on July 1. Finding no payment noted and no coupon on file on July 1, he called the A. A. A. Credit Company and requested them to repossess the car.

Employees of that company went to Hunnewell and took the automobile from Gill's front yard at 3:45 a. m. on July 2. They drove it to St. Louis and informed the Mercantile Trust Company that the car had been repossessed. The plaintiff was awakened by his car being started and driven from his yard. Thinking that it was being stolen he called the sheriff and state highway patrol. There was considerable testimony about his efforts to locate the automobile and testimony relating to embarrassment caused him by the repossession of the car, but this need not be set out because of the view that we take of the case.

Mr. Jenny, in charge of automobile loans, testified that he learned in the morning of July 2 that Gill's car had been repossessed. He checked Gill's ledger card and saw that payment had been entered the evening before. He noted the bank upon which Gill's check was drawn and called the bank at Hunnewell at 9:30 in the morning of July 2. He was informed by the assistant cashier of tthe bank that Gill had insufficient funds on deposit to pay the check. He then told the assistant cashier of the Hunnewell Bank that if Gill would deposit sufficient funds to cover the check, he could have his car back.

Jenny phoned Gill but could not reach him. He talked to his wife and told her that their car had been repossessed, but that Gill could have it back if he deposited sufficient funds in the Hunnewell Bank to satisfy the check he had sent to the Mercantile Trust Company. At about 1:30 Jenny had another conversation with the assistant cashier of the Hunnewell Bank and was informed that sufficient money had been deposited by Gill to cover the check.

The plaintiff testified that at the time his car was repossessed on the morning of July 2, he did not have sufficient funds in the bank to cover the check he had sent to the defendant. He made two deposits around noon of that day, which brought the account up to a sufficient amount to clear the check that he had written and mailed on June 28.

Arrangements were made for Gill to meet Mr. Jenny of the Mercantile Trust Company at the Jantzen Chevrolet Company. They met that same afternoon, and Gill's car was returned to him upon payment of $63.00. Gill testified that he was told this sum was for additional interest and the cost of repossession.

The mortgage provides the following:

"If mortgagor shall fail to pay said note or any installment thereof when due * * * or if mortgagee at any time, in good faith, deems itself or said debt insecure or unsafe * * * then, upon the happening of any one or more of such events, the mortgagee shall have the absolute right at his or its option, whether or not said indebtedness shall have become due, to foreclose this mortgage by legal action or otherwise, and to take immediate possession of said motor vehicle wherever it may be found, with or without notice or demand or legal process and mortgagor waives all claims for damages caused thereby."

As stated, the jury awarded $300 actual damages. This is for damages said to have been done the car while taking it to St. Louis, plus the loss of its use and the $63 the defendant was obliged to pay for its return. The additional $5,000 awarded was punitive damages. The trial court granted a new trial on the ground that it had given an erroneous instruction. The plaintiff-appellant's only contention on appeal is that the instruction was not erroneous and that the verdict and judgment should be reinstated.

The respondent, while defending the action of the trial court in holding the instruction erroneous, contends that the court erred in failing to direct a verdict for the

defendant at the close of all the evidence, in accordance with defendant's motion for a directed verdict filed at the close of the evidence. Whether or not the plaintiff made a submissible case is a basic question which we will decide under the circumstances here present. Bailey v. Interstate Airmotive, Inc., 358 Mo. 1121, 219 S.W.2d 333, 8 A.L.R.2d 710; Krueger v. Elder Mfg. Co., Mo.App., 260 S.W.2d 349.

■ It is settled law that legal title to a mortgaged chattel vests in the mortgagee after the mortgagor has broken one of the conditions imposed upon him by the mortgage. This title carries with it the right to seize the mortgaged chattel, without provoking a breach of peace, and to do what is reasonably necessary to make the seizure. Day v. National Bond & Investment Co., Mo.App., 99 S.W.2d 117; Personal Finance Co. of St. Louis v. Endicott, Mo.App., 238 S.W.2d 51.

It follows that if Gill was in default on the last payment at the time the seizure of the automobile was made, then such seizure was legally made, and there is no contention to the contrary.

It is plaintiff-appellant's position that the defendant accepted the check as payment on July 1, and that the repossession of the car on the early morning of July 2 was therefore an unlawful seizure of plaintiff's property. The defendant-respondent conversely maintains that the check was not accepted as payment at the time of the seizure.

■ A check is not payment of a debt unless it is received as such by express agreement. No presumption arises that the creditor has taken the check in absolute payment of an account owing, by reason of the fact that the creditor accepts the debtor's check. G. F. C. Corporation v. Nesser, Mo.Sup., 273 S.W.2d 264; Hicker-son v. Con Frazier Buick Co., Mo.App., 264 S.W.2d 29; State ex rel. Percy v. Cox et al., 325 Mo. 938, 30 S.W.2d 46.

■ The debt is not discharged until the check is in fact paid in due course. Komosa v. Monsanto Chemical Company, Mo.Sup., 317 S.W.2d 396. The entry by the defendant that the account had been paid on July 1 was conditional upon the check being paid. G. F. C. Corporation v. Nesser, supra.

■■ The plaintiff asserts that though it may be true that a check is not payment until the check clears, after the check clears such payment dates back to the time that the check was accepted by the creditor. While this may be a rule applied to valid checks, we hardly see its application to the facts before us. For a check to be payment the debtor must have funds to his credit in the bank upon which the check is drawn and the bank must be in a position to pay on it on demand. Fleig v. Sleet, 43 Ohio St. 53, 1 N.E. 24; Waggoner Bank & Trust Co. v. Gamer Co., 113 Tex. 5, 213 S.W. 927, 6 A.L.R. 613. It was admitted that the plaintiff did not have funds in the bank to pay the check at the time he drew it, nor at the time it was received by the defendant, nor at the time his automobile was seized. The check was worthless until he made the deposits after his car had been taken. His payment due under the mortgage was clearly in default, and the defendant acted within its rights under the mortgage.

For these reasons the court should have directed a verdict for the defendant at the close of the case. The cause is therefore reversed and remanded with directions to set aside the order granting a new trial, and to enter a judgment for the defendant, all at appellant's cost.

ANDERSON, J., and SAM C. BLAIR, Special Judge, concur.