MARTHA M. WILSON, RESPONDENT, v. KANSAS CITY LIFE INSURANCE COMPANY, APPELLANT.—128 S. W. (2d) 319.

Kansas City Court of Appeals. May 8, 1939.

*McAllister, Humphrey, Pew & Broaddus,* and *Joseph R. Stewart* for appellant.

*L. W. Littick* and *Walter A. Raymond* for respondent.

SPERRY, C.—Martha M. Wilson was plaintiff below and Kansas City Life Insurance Company was defendant. The parties will be referred to herein as plaintiff and defendant in the order above mentioned.

Plaintiff was beneficiary in a life policy issued by defendant upon the life of her son, James Oliver Wilson, now deceased, whom we will refer to as insured. Suit was by plaintiff and from a judgment in her favor defendant appeals.

Plaintiff testified in her own behalf to the effect that she took the policy for her son; that insured died June 22, 1931; that she made demand for payment under the policy and that payment was refused. The policy was later introduced in evidence and plaintiff was named therein as beneficiary with no right to change beneficiary reserved. It also showed the policy issue and premium paying date as of July 27, 1929, and that it was issued in "further consideration of the annual premium of thirteen dollars and eighty-nine cents for one year term insurance from date hereof. This policy will be continued upon the further payment of a like amount on or before the twenty-seventh day of July each year thereafter until the anniversary of this policy nearest the insured's 80th birthday." The application was dated July 18, 1929, and signed: "James Oliver Wilson.

"Martha M. Wilson
Mother."

The age of insured at nearest birthday, when the policy was issued, was fourteen years.

The above evidence made out a *prima-facie* case for plaintiff. "Plaintiff made a *prima-facie* case by introducing the policy in evidence, making formal proof of the death of the insured, that she had been made beneficiary in the policy, and had made due proof of notice. The burden of proving nonpayment of the premiums and lapse of the policy was thereby cast upon defendant." [Girvin v. Metropolitan Life Ins. Co. (Mo. App.), 75 S. W. (2d) 596, l. c. 597; Waters v. Bankers Life Ass'n (Mo. App.), 50 S. W. (2d), 183, 226 Mo. App. 1188, l. c. 1190 and l. c. 1199; Gannon v. Laclede Gas Light Company, 145 Mo. 502, l. c. 514, 515, 516, 517.]

The defense offered was that the policy lapsed prior to death of insured because of failure to pay the second annual premium, which premium had theretofore fallen due. This was an affirmative defense and the burden of proving it rested on defendant. [Parker v. Atlanta Life Ins. Co. (Mo. App.), 112 S. W. (2d) 885, l. c. 886.]

Ordinarily the rule is that when plaintiff has once made a *prima-facie* case, as was done here, the case made is one for the jury to pass

on and the court has no power to sustain a demurrer ·or instruct a verdict. This is on the theory that under our system the jury is the sole judge of the weight and credibility of the evidence offered on both sides. [Gannon v. Laclede Gas Light Company, *supra*; Williams v. American Life & Accident Ins. Co. (Mo. App.), 112 S. W. (2d) 909, l. c. 915.] But this rule, like most others recognized by the law, has its exceptions. The exception applicable here is thus stated by the St. Louis Court of Appeals in Johnson v. Missouri Ins. Co., 46 S. W. (2d) 959, l. c. 961:'' Arguments are frequently made that indicate a belief that documentary evidence, *whatever the character of the writing may be,* supersedes and overcomes parol evidence to a contrary effect, and leaves no issue of fact for the jury to determine. However, such is not the case. Before a writing may be said to be conclusive in respect to the truth of what it contains, it *must be an instrument of record having legal efficacy, and the person to be bound thereby must be a party to it or else must have vouched for, or be estopped to deny,* its truth.'' (Italics ours.)

Defendant's sole contention that error was committed in this case is predicated on the failure of the trial court to sustain its demurrer to the evidence, offered at the close of the whole case. It contends that it offered evidence of such a character that, in law, it completely overcame and destroyed the *prima-facie* case of plaintiff, and that it was the duty of the trial court, as a matter of law, to take the case from the jury.

In passing upon the above contention it is necessary to consider defendant's evidence under two general classifications, to-wit: (a), Unsigned documentary records relative to this policy which were kept by the company in the usual way; and, (b), written documents introduced in evidence by defendants, which are alleged to be, in effect, signed by insured. In discussing the effect of evidence under both class (a) and (b) above, we recognized the rule to be that documentary evidence of every character may be supplemented by parol evidence to the extent that it is necessary to do so in order that its connection with the case may be established; and such connective and explanatory parol evidence does not change the character of the documentary evidence, or otherwise affect its legal efficacy as documentary evidence. [Yarber v. Connecticut Fire Ins. Co., 10 S. W. (2d) 957, l. c. 961; Kazee v. Kansas City Life Ins. Co., 217 S. W. 339, l. c. 341.] But parol evidence necessarily introduced in connection with such documentary evidence as above mentioned, does not thereby take on the character of documentary evidence. It remains parol evidence and will be so regarded by the courts, especially where such parol evidence goes further than is really necessary to connect the documentary evidence with the case on trial. This is but the converse of the rule announced in the two last-cited cases. ·Parol evidence offered by defendant favorable to it, of a character

No. 462318 | Amt. 1000

Name James Oliver Wilson

Address Plattsburg, Mo.

Plan L80-NP-DI

Date of Birth 9-12-15 | Age 14

Pol. Date 7-27-29
7-18   7-22
Non-Med.

| A. | B.A. | PREMIUM | Qr. |
|---|---|---|---|
| 13.89 | 7.22 | | 3.68 |

Agency 1
Sub-Agt.
Beneficiary T. F. Welch
to Martha M. Wilson
mother

Pol. Sent to        Int. Q. AGENCY        G 2 - 1929
Pol. Loan        Int. Paid to
Terminated LAPSED 6-1-31   4-4-31-87
Remarks   CLAIM NO. 4
8-11-36

| PREMIUM PAID | | | PAID TO | | | PREMIUM PAID | | | | PAID TO | | | PREMIUM PAID | | | | PAID TO | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Month | Day | Amount | Mo. | Day | Year | Month | Day | Year | Amount | Mo. | Day | Year | Month | Day | Year | Amount | Mo. | Day | Year |
| AUG | 27 1929 | 13.89 | 7-27 36 | | | | | | | | | | | | | | | |
| 12 | 29 | | | | | | | | | | | | | | | | | |
| B 2 | 24 '31 | 1.70 | | | | | | | | | | | | | | | | |
| C 4 | 25 '31 | 1.25 | | | | | | | | | | | | | | | | |

SEP 28 1931

KANSAS CITY LIFE INSURANCE CO.

1012

not necessary to connect or explain its documentary evidence, will be disregarded by this court after verdict for plaintiff.

Under class (a), above, defendant introduced in evidence its exhibit No. 1, the policy record card, which is herewith reproduced:

First, this is a record made and kept by defendant, not signed or admitted to be true by either insured or plaintiff, and it is not binding on either. [Girvin v. Metropolitan Life Ins. Co. (Mo. App.), 75 S. W. (2d) 596, l. c. 599; Parker v. Atlanta Life Ins. Co. (Mo. App.), 112 S. W. (2d) 885, l. c. 886; Johnson v. Missouri Ins. Co. (Mo. App.), 46 S. W. (2d) 959, l. c. 961.] Second, the record is such that it requires parol evidence to explain contradictory features apparent on its face. For instance, there appears the following entry thereon: "Lapsed 6-1-31;" but there also appears therein, in the column headed: "Paid to," the figures "7-27-31." Undeciperable writings are also evident. True, parol evidence was offered by defendant to explain this record; but the jury was not required to believe defendant's witnesses in this regard, even though no witness for plaintiff contradicted this parol evidence in so many words. [Gannon v. Laclede Gas Light Co., *supra*, and other citations listed therewith.] There is a printed "addressograph" thereon dated "September 28, 1931," although insured died June 22, 1931. Again, parol evidence was offered to explain this. This record showed the first annual premium received was in the amount of $13.89; but defendant's Exhibit 8, its premium receipt, showed a premium of $14.02 received. This exhibit showed receipt of $1.30 December 29, 1930; but it offered other evidence that this money was received October 6, 1930. We think the documentary evidence above mentioned may be adjudged in the language of the Springfield Court of Appeals in Girvin v. Metropolitan Life Ins. Co., *supra*, l. c. 600, to-wit:

"Such a record at least shows a carelessness in the keeping thereof, which would cause a court to hesitate to accept as true such facts as are indicated on that record. Such evidence is not clear, cogent, and convincing. Neither plaintiff nor the insured were responsible for that record or bound by it."

The trial court would not have been justified in sustaining the demurrer on the documentary evidence above mentioned.

However, defendant introduced in evidence its Exhibit 2, being an application for reinstatement of the policy sued on, said application reciting therein:

"My policy of Life Insurance in the Kansas City Life Insurance Company having lapsed because of my failure to pay the P. note premium of $3.72 thereon due and payable on the 27th day of *Sept.*, 1930, I hereby make application for reinstatement of said policy, upon the conditions and agreements hereinafter set forth . . . "
This instrument was signed:

"James Oliver Wilson
Applicant
"by M. B. Wilson (Father)." (Italics ours.)

In connection with the above exhibit, defendant offered its Exhibit 3, it being in part as follows:

"Premium Extension Note.

"Kansas City, Mo., July 27th, 1930.

"Pol. No. 462318.

"Jan. 27th, 1931, without grace, after date, for value received, I promise to pay to the order of the Kansas City Life Insurance Company Twelve dollars and 59/100 dollars.

"This note, together with $1.30 in cash, is tendered to the Kansas City Life Insurance Company in payment of the Premium on policy 462318 due on the 27 day of July, 1930, and upon the understanding and agreement that the same shall not be binding on the Company unless and until accepted by the President or Secretary at the Home Office of the Company in Kansas City, Missouri, and that, if accepted, such acceptance shall be upon the following express conditions and agreements, to-wit:

"That the aforesaid sum of money shall be held by the Kansas City Life Insurance Company until the due date of this note, and if this note be paid when due, and payment thereof is accepted by the Company, then the cash aforesaid, together with the sum paid in discharge of this note, shall constitute payment in full of said premium, and my rights, the rights of my beneficiary, or anyone claiming under said policy, and the rights and liabilities of the Company thereunder, shall be the same as though said premium had been paid when the same was due according to the terms of said policy; but if this note is not paid by me when due, according to its terms, or payment thereof shall not be accepted by the Company, then this note shall immediately and automatically cease to be an obligation or claim against me, and the aforesaid sum of money shall be applied by the Company as compensation for the extension of the time of payment of said premium and as the earned premium for carrying my policy for the full amount thereof, under the terms and conditions thereof, until the due date of this note, and my rights, the rights of my beneficiary, or anyone claiming under said policy, and the rights and liabilities of the Company thereunder shall be the same as though said cash had not been paid or this note given, except that extended insurance, if any, under the non-forfeiture provision of the policy shall be computed from the due date of this note.

"Address 18 W 34th

"Signed  James Oliver Wilson
"by M. B. Wilson (father).
"Policy Number 462318"

The above note was never paid in full, according to the record and parol evidence offered by defendant. The fact that said note remained, at the time of trial, in the possession of defendant, is sufficient evidence to raise a presumption that it was not paid, and to

rebut any presumption that might arise from the evidence in this case that same was paid. [Kazee v. Kansas City Life Ins. Co., *supra*, l. c. 341.]

Defendant produced parol evidence to the effect that, by reason of insured's failure to pay the above note when due, further applications for reinstatement of the policy, similar in wording and legal effect except as to dates and amounts of money involved, and with signatures affixed thereto as in the one above set out, were submitted to and approved by defendant on February 16, 1931, and on April 20, 1931. On June 22, 1931, the day insured died, another application for reinstatement, identical in form and legal effect, was submitted but was never approved. No notes except the first were ever made. Defendant's secretary, testifying for defendant, identified said exhibits and testified as to their acceptance by defendant. He also testified that at the time the note was given there was paid to and accepted by defendant the sum of $1.30 in cash, which, together with the amount of the note, $12.59, was the full amount of the premium, $13.89; that the cash payment of $1.30 was actually *not* applied in accordance with the terms of the note and extension agreement, that is, in payment of the charge for carrying the full amount of the policy as extended insurance to a date named, but was actually applied as a premium payment. Thereafter, on December 27, 1930, fourteen cents was paid and credited on the premium; on Feb. 21, 1931, the sum of $2.70 was paid and credited as premium money; and on April 24, 1931, the sum of $1.25 was paid to and credited by defendant as premium. It is the contention of defendant that by reason of these payments, the policy was carried in force until June 1, 1931, at which time it expired because no further premium was paid. This witness also testified that the note above mentioned was not actually cancelled until sometime after death of insured, although the date of cancellation on the note was: "6-21-31"; and there was convincing evidence from which the jury could have found that said note was not actually cancelled until after September 1, 1931.

The policy carried the following provision:

"Unless the first premium has already been paid in cash, then this policy shall not take effect until the first premium hereon has been paid, and this policy delivered to the applicant within thirty days from date hereof, or unless the applicant is in good health at the time of its delivery."

The policy recited that it was executed, and was to date from July 27, 1929; the application was dated July 18, 1929, and recited receipt of $14.02 premium; the record card, defendant's Exhibit 1, showed receipt of the premium on August 2, 1929; and the policy receipt, purporting to be signed (but the genuineness of the signature

was disputed), on August 3, 1929, showed instructions to agent, attached thereto, were that said policy was not to be delivered unless insured was found to be alive and in good health. These various conflicting provisions and facts create an ambiguity in the contract as to the real effective date thereof and authorizes the application of the rule that where there is any ambiguity in a contract the court should construe the contract most strongly against the insurer who drew it. [Evans v. Equitable Life Assur. Soc., 109 S. W. (2d) 380, l. c. 383; Landrigan v. Missouri State Life Ins. Co., 211 Mo. App. 89, l. c. 106.] In accordance with said rule we hold the effective date of said policy to be the date of delivery and not the policy date. Defendant's own evidence, documentary and parol, clearly proves that the policy was *not* delivered on the date mentioned therein as the policy date and the first annual premium was not paid in cash prior to the delivery of the policy; and its evidence in this behalf leaves the date of delivery largely to speculation. Plaintiff's evidence, however, was clearly to the effect that the policy was delivered and the balance of the premium thereon actually paid on September 12, 1929, the date of insured's fourteenth birthday. Under the evidence and the instructions of the court the jury found that the policy was delivered and became effective on that date and that finding is conclusive on this court. Under the doctrine announced in Halsey v. American Central Life Insurance Company, 258 Mo. 659, l. c. 669, insured was entitled to one years insurance from September 12, 1929, in return for the first annual premium; and he was not required to pay a second premium until September 12, 1930. He was protected for thirty-one grace days after September 12, or until October 13, 1930.

Defendant states that the policy specifically provided term insurance ending on July 27, 1931, in return for the first premium; that the contract did not provide for a full year's insurance for the first premium, and that the parties so understood the contract. In support of this position defendant cites a line of cases based on the doctrine announced in Prange v. International Life Insurance Company, 329 Mo. 651, and National City Bank of St. Louis v. Missouri State Life Insurance Company, 332 Mo. 182. The distinction between the facts in the case at bar, which are ruled by the Halsey case, and the facts in the Prange case and National City Bank case, *supra,* is clearly pointed out in Tabler v. General American Life Insurance Company (Mo.), 117 S. W. (2d) 278, l. c. 281, *et seq.* In the Halsey case, the dates of payment of balance of the first premium and date of delivery of the policy were the same. In the case at bar, unlike the situation in the cases relied on by defendant, nothing appears that indicates any agreement between the parties regarding the due date of premiums; nor are there peculiar circumstances present here, such as change in age of insured at nearest birthday, etc., that indi-

cates such an agreement or reason therefor. This case is ruled by the Halsey case.

Next, defendant contends that if, as a matter of fact, there was an ambiguity in the contract growing out of a difference between its effective date and its premium paying date, that the parties themselves insured and defendant, have placed their own construction on same by the filing and acceptance of the applications for reinstatement wherein they agreed that the policy premium paying date was intended to be July 27, 1930. That doctrine was applied in Scotten v. Metropolitan Life Insurance Co., 336 Mo. 724, l. c. 730, where it was held that the parties had placed their own construction on the policy provisions as to due date of premiums. This rule was followed by this court in the recent case of Evans v. Equitable Life Assurance Soc., 109 S. W. (2d) l. c. 384.

If plaintiff were bound by the filing of the applications for reinstatement by insured's father this case would fall squarely within the rule applied in the above cited case, for it is specifically stated in said applications for reinstatement that the premium was due and payable on July 27, 1931, and that said policy had lapsed for non-payment. In truth, the applications, if they be binding on plaintiff, go further than a mere construction of an ambiguous policy provision; they amount to a conclusive admission that said policy was without force or affect when same were filed with defendant unless the policy was reinstated. [Beeman v. Kansas City Life Ins. Co. (Mo. App.), 104 S. W. (2d) 391, l. c. 392.]

Insured was a minor and these instruments were executed in his name by his father, who was not his legally appointed guardian and had made no bond. Defendant contends that his act bound insured by reason of the fact that he was insured's natural guardian. There is no evidence tending to show that either insured or plaintiff knew or, or agreed to, the execution of these instruments by insured's father.

Section 375, Revised Statutes Missouri, 1929, is identical, so far as concerns the question here, with R. C. 1835, par. 294, construed by the Supreme Court in McCarty v. Rountree, 19 Mo. 343, l. c. 348, l. c. 349, 350, where that court held:

". . . the father, as natural guardian of his child, has no right to control or dispose of the property of the child, derived from any other person than the father, until he had given bond with security under the statute."

This ruling was followed in Sherwood v. Neal, 41 Mo. App. 416, l. c. 423; Higgins v. Railroad, 36 Mo. 431; Spillman v. Missouri Pacific R. R., 111 Mo. 555, l. c. 562, and we have not found any case where the doctrine there declared had been questioned. The insurance policy

before us was not taken out by the father, but was property acquired for the minor by plaintiff. There is no evidence which establishes, as a matter of law, just who paid any other premiums on policy. While plaintiff was named as beneficiary without reservation or right to change beneficiary, and thus had a vested right in said policy, yet the policy was one which provided for accumulation of cash and loan values which insured might thereafter, in the manner therein prescribed, withdraw for his own benefit. The policy was, therefore, personal property in which insured had an interest. It is said in 3 Couch Cyclopedia of Insurance Law 642, that a policy on a minor's life may not be changed to a paid up policy by act of his father and mother as natural guardians. It was held in Burke v. Prudential Ins. Co., 221 Mass. 253, l. c. 255, that a father, who is not the owner or beneficiary of a policy on the life of a minor, has no legal right to consent to a cancellation thereof, or to consent to its conversion into a different kind of contract. It is also asserted, 6 Couch Cyclopedia of Insurance Law 1421, that a father, made by statute the natural guardian of his child without defining his powers, has no authority to consent to a surrender of a life policy which has been taken out for the benefit of the ward. Such is also the law as declared in Ferguson v. Phoenix Mut. L. Ins. Co., 84 vt. 350, 35 L. R. A. (N. S.) 844, l. c. 849.

Neither party hereto has briefed this question. Plaintiff denies the power of the natural guardian to bind insured by his execution of the reinstatement applications and the note; and defendant contents itself with affirming such authority. We have found no Missouri insurance case squarely in point, but the above authorities would indicate that the principle announced in McCarty v. Rountree, *supra,* would apply here. Insured's father, if his act be binding upon insured, in effect irrevocably bound insured to the proposition that his insurance policy had lapsed, when, in fact, it had not lapsed. If insured were alive he would be estopped to contend that his policy had not lapsed, if the act of his father is binding on him. If the act of the father was binding on insured then the father surrendered the policy and completely disposed of it, taking in return therefor another contract of insurance; and he did it at a time when the policy was in force but for his act. We hold that the applications for reinstatement, and the note given in connection therewith, were not binding on insured and cannot serve the purpose of establishing that the parties had construed the policy with reference to due date of premium; and that plaintiff is not estopped or prohibited thereby from asserting that said policy did not, in fact, lapse.

Defendant admits receipt of the sum of $1.30 cash on October 6, 1930, while the policy was legally in full force and effect, and further admits that said sum was not applied in payment for an extension of the insurance, in accordance with the tenor of the rein-

statement application, but was in fact applied as a premium on the policy.

It also admits that it received the sum of $2.70 cash on February 24, 1931, which it applied as premium on the policy. The acceptance of a premium and its application to the policy, absent an accepted legal explanation or excuse, precludes defendant from denying that said policy was then in force.

It admits that it received and applied the sum of $1.25 as premium money on April 25, 1931, and admits that said policy was in force on June 1, 1931, but claims that a further premium payment fell due on that date. Under the terms of the policy insured was protected for a period of thirty one days beyond the last due date of premium, which period of grace carried the policy in force beyond the date of death of insured, which occurred on June 22, 1931.

Defendant's record card, absent parol evidence contradictory of it, established the policy to be in force until July 27, 1931. The note was not cancelled until after September 1, 1931, and then it was cancelled as of the day before insured's death. Defendant did not mark the policy as lapsed on the record card until after death of insured, and then it stamped it lapsed as of June 1, 1931.

The position which defendant takes here is that; because of non-payment of premiums the policy *had* lapsed and *was* forfeited, prior to insured's death. We think, in view of defendant's own record and other evidence before us defendant was . . . occupying an equivocal position, in this, to-wit: As long as the insured was alive and the policy was a possible premium getter, the company would regard it as in force so far as its being a source of possible premiums was concerned, but the moment insured died, then the policy would be treated as being long since for forfeited because of the default in the payment of the notes when they became due. Such equivocal position is not looked upon with favor.'' [O'Donnell v. Kansas City Life Insurance Company, 222 S. W. 920, l. c. 921, 922.]

This evidence alone, without giving any consideration whatever to whether the policy premium paying date or the delivery and effective date govern, was sufficient to justify the verdict of the jury to the effect that the policy was in force on June 22, 1931, the date of insured's death.

For the reasons above stated defendant's demurrer to the evidence was properly ruled. No other error being herein alleged or urged, the judgment should be affirmed. *Campbell, C.,* concurs.

PER CURIAM—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.