**Marian LE PAGE, Plaintiff-Appellant,**

v.

**METROPOLITAN LIFE INSURANCE COM-
PANY, a Corporation, Defendant-
Respondent.**

**No. 46108.**

Supreme Court of Missouri,

Division No. 1.

July 14, 1958.

Paul Taub, Overland, for plaintiff (appellant).

Fordyce, Mayne, Hartman, Renard & Stribling, William W. Sleater, Jr., St. Louis, for defendant (respondent).

HOLMAN, Commissioner.

On November 5, 1954, defendant issued a policy of life insurance in the sum of $7,000 upon the life of Louis E. LePage. Plaintiff, the wife of insured, was named as beneficiary in the policy. The insured died on March 29, 1955. In this action plaintiff sought to recover the amount alleged to be due upon the said policy. In accordance with the verdict of the jury the trial court entered a judgment for plaintiff in the sum of $7,546. Thereafter, the court sustained the defendant's motion for judgment in accordance with its motion for a directed verdict and the judgment for plaintiff was set aside and judgment entered for defend-

ant. In the alternative, the court also sustained defendant's motion for new trial. Plaintiff has duly appealed.

In its answer defendant admitted (1) the issuance of the policy on the date heretofore mentioned, (2) that plaintiff was the wife of insured and was named as beneficiary in the policy, and (3) that insured died on March 29, 1955. At the trial defendant admitted that the first quarterly premium of $24.22 was paid and that plaintiff had made claim for the amount of the policy and that payment had been refused. The vital, contested issue in this case related to the payment of the quarterly premium which became due on February 5, 1955. Plaintiff contended that she paid the premium by a check dated February 5, 1955, which she mailed to the office of defendant. Defendant admitted receipt of the check but asserted that it was dishonored by the bank upon which it was drawn; that defendant never received the amount thereof or the amount of said premium; and that the policy lapsed for nonpayment of said premium prior to the date of the death of insured.

The policy sued on contains the following provisions: "The payment of a premium shall not maintain this Policy in force beyond the due date when the next premium is payable, except as otherwise provided in this Policy. A grace period of 31 days, without interest charge, shall be granted for the payment of every premium after the first, during which grace period this Policy shall continue in full force * * *." It was agreed that the grace period herein expired on March 8, 1955.

Plaintiff testified that in January 1955 the insured received a notice in regard to the instant premium; that on or about February 5, 1955, she mailed the notice back to the defendant, together with a check in the sum of $24.22 in payment of same and thereafter received a receipt for the check from the defendant. Upon cross-examination she stated that the check was drawn on St. Johns Community Bank in which she and her husband maintained a joint account; that her husband would also draw checks on the account and sometimes did so without advising plaintiff thereof. She stated further that she had no knowledge that the check had not been paid until she received a statement from the bank, after the death of her husband, which disclosed that the check had not been charged against her account.

Plaintiff also testified to the following: "Q. Mrs. LePage, when you sent this check for $24.22 to the Metropolitan Life Insurance Company, did you have money in the bank—that bank—to cover this check? A. To my knowledge, I did.

"Q. What knowledge did you have that you had $24.22 in the bank when you drew this check? A. I thought I had the money in the bank. * * *

"Mr. Taub: Q. At the time you wrote this check were you keeping a record of the funds still in your account? A. Yes.

"Q. At that time did you know how much money was in your account by your records? A. Yes.

"Q. At the time you wrote this check, by your record and your knowledge, were there funds in this account in that amount of $24.22? A. Yes.

"Mr. Taub: That is all." Cross-examination by Mr. Sleater: "Q. You mean you just thought that that money was there, is that it? A. I never called to check.

"Q. You never checked, but you did get this—later on from the bank—this statement that covered several months? A. After my husband had died.

"Q. And you learned that the check—after you went over that statement, didn't you, that the check you had given for $24.22 had not been honored by the bank? A. It wasn't on my statement.

"Q. It wasn't on this green statement showing it as having been paid? A. No.

"Q. And you never paid that check, did you? A. No, I never paid it.

"Q. You have never paid the $24.22, have you? A. No."

Evidence on the part of defendant indicated that the check was received on February 8, 1955, and deposited in the Mercantile-Commerce National Bank on February 10. An effort was made to clear the check (it was twice presented to the St. Johns Bank) but it was returned unpaid to Mercantile-Commerce on February 18, charged back to the defendant's account and mailed by the bank to defendant.

Mr. Jack Isherwood, assistant cashier of St. Johns Community Bank, testified that the check in question was presented the first time on February 14, and again on February 16, but was not paid because the account of Mr. and Mrs. LePage was then in overdraft. He stated that the account was overdrawn at all times during the period from February 4 until March 21. He also testified that a statement had been mailed to these depositors about March 25, 1955, which would have disclosed that the check had not been paid.

Ralph R. Conroy, an agent for defendant, testified that he called on plaintiff on February 23, 1955, and informed her that the check had been returned to the company and that she told him she would mail the money in during the week end.

The agent who obtained the application for the instant policy, Irvin J. Nelson, testified that the check in question was delivered to him by the office cashier on February 23, 1955. He stated that he went to the LePage home on three occasions (February 25, March 1 and 4) in an effort to collect the amount of the premium represented by the dishonored check. On each occasion he was unable to find anyone at home and left a note in the door advising that the check had been returned and requested that one of the LePages call him at once. No call was ever received. He stated that he also attempted to telephone the LePage home several times and was unable to find anyone at home.

Records kept by the defendant concerning the policy in question were admitted in evidence. They do not disclose that the premium due on February 5, 1955 was ever paid. The credit entered when the instant check was received from plaintiff was later marked out with the notation "N.G.ck." The receipt which had been mailed to plaintiff was not offered in evidence by her but was delivered to the attorney for defendant in open court (upon request) and was admitted in evidence as a defendant's exhibit. The following appears on that receipt: "Any check or draft received may be handled for collection in accordance with the practice of the collecting bank or banks, and this receipt shall be void if the full amount of such check or draft is not received by the Company."

In support of her contention that the trial court erred in entering judgment for the defendant, plaintiff says that she made a prima facie case and that the court could not thereafter have directed a verdict for the defendant. We have read a number of cases decided by the appellate courts of Missouri which state that in this type of action a plaintiff may make a prima facie case by the introduction of the policy in evidence and proof that plaintiff is the beneficiary, that the insured is dead, and that due proof of death has been furnished the defendant. In that situation it is said that the burden of proving nonpayment of premiums and lapse of the policy is thereby cast upon the defendant. Girvin v. Metropolitan Life Ins. Co., Mo.App., 75 S.W.2d 596. The theory usually advanced in support of the rule is that "with the insured dead, while the insurance company would naturally be in possession of complete information with respect to his payment or nonpayment of the premiums, the same could not be said of his beneficiary, who, not having been a party to the contract, could not ordinarily be expected to have such information at her disposal. It follows, therefore, that once the plaintiff bene-

ficiary in such an action shows the issuance of the policy upon the life of the insured, she is to be aided by a presumption that the policy was continued in force by the payment of premiums by the insured until his death, and if this presumption is to be rebutted, then the company, being in possession of the facts, must assume the burden of overcoming the same by evidence of nonpayment." White v. Prudential Ins. Co. of America, 235 Mo.App. 156, 127 S.W.2d 98, 102, 103.

Moreover, as contended by plaintiff, "There is a general rule to the effect that where plaintiff makes out a prima facie case the burden of the evidence shifts to the defendant and if plaintiff has made out such a case, the trial court cannot direct a verdict for defendant. For to do so would be to illegally interfere with the prerogative of the jury to judge of the credibility of the witnesses and the weight to be given their testimony, [but] there is an exception to this rule and a directed verdict should be given, under such circumstances when the prima facie case has been completely destroyed by unimpeached and uncontradicted record evidence, but the person to be bound thereby must be a party thereof or else must have vouched for or is estopped to deny its truth. See Waters v. Bankers' Life Ass'n of Des Moines, Iowa, 226 Mo. App. 1188, 50 S.W.2d 183, where defendant's cases are distinguished; Johnson v. Missouri Ins. Co., Mo.App., 46 S.W.2d 959; Wilson v. Kansas City Life Ins. Co., 233 Mo.App. 1006, 128 S.W.2d 319; Parker v. Atlanta Life Ins. Co., Mo.App., 112 S.W.2d 885; Foster v. Metropolitan Life Ins. Co., Mo.App., 233 S.W. 499." Hill v. Connecticut Mutual Ins. Co. of Hartford, 235 Mo.App. 752, 146 S.W.2d 651, 659.

■ However, the foregoing rules have no application here because the plaintiff, in presenting her evidence, did not seek to avail herself of the presumption in question, but, in an effort to establish a submissible case, voluntarily assumed the burden of proving that the premium (due February 5, 1955) which was required to be paid to maintain the policy in force until the date of insured's death was, in fact, paid. It will be noted that upon her direct examination she testified fully as to the time and manner of payment. From her testimony, we think it may reasonably be concluded that if the premium in question was not paid at the time and in the manner as contended by plaintiff, it was not paid at all. Under the circumstances existing in this case we have the view that, in order to make a prima facie case, it was incumbent upon plaintiff to present evidence from which a jury could reasonably have found that the instant premium had been paid on or prior to March 8, 1955. Gibson v. Texas Prudential Ins. Co., 229 Mo.App. 867, 86 S.W.2d 400 [2], [10]; Bennett v. Royal Union Mut. Life Ins. Co., 232 Mo. App. 1027, 112 S.W.2d 134 [2]. In determining that question we will view the evidence in the light most favorable to plaintiff.

■ Plaintiff testified that she mailed a check in payment of the premium to defendant's office. However, "It is a universal rule of law that in the absence of an agreement to the contrary, the delivery of a check to the creditor and his acceptance of it is not payment of the debt or obligation until the check has itself been paid, and that when the check is not paid, it may not be said to have constituted payment of the debt or obligation for which it was given. Moreover, this rule extends as well to transactions falling within the purview of insurance law, which contemplates that insurance premiums are ordinarily to be paid in cash, and that in the absence of a different intention or agreement, the giving of a check therefor will not operate as payment." Martin v. Illinois Bankers Life Assur. Co., Mo.App., 91 S.W.2d 646, 649. Under the circumstances shown herein, we rule that the delivery of the check to the defendant did not constitute payment of the premium unless the amount thereof was paid upon presentment of the check to the bank upon which it was drawn. Plaintiff conceded in her testimony that she subsequently learned that the check

had not been charged against her bank account. *She also admitted that she had never paid the check and had never paid the amount of the premium.* That testimony destroyed the probative force of her previous evidence to the effect that she had paid the premium by delivery of the check in question and left her case devoid of any substantial evidence from which the jury could reasonably have found that the premium had been paid. There is no dispute about the fact that if the instant premium was not paid the policy lapsed prior to the death of the insured.

Plaintiff suggests that her testimony that her records at the time she wrote the check showed that she had $24.22 in the account should have been sufficient to make a prima facie case. We do not agree. In that connection it should be noted that she stated that her husband sometimes wrote checks on the account and did not advise her thereof. Moreover, the fact that she may have had the money in the account at the time of writing the check would not indicate that the money was in the account when the check was thereafter presented for payment. The question involved is whether a sufficient sum was in the account on the date of presentment in the usual course of business and not the amount on deposit on the date of writing the check. Plaintiff did not state that the amount shown by her records remained in the account for the purpose of the payment of the check at the time it might thereafter be presented to the bank.

It should perhaps be noted that although plaintiff testified that she had no notice from the defendant that the bank had not paid the check until after the death of the insured no theory of estoppel or similar theory of liability, based upon that fact, was presented in the trial court or here on appeal.

Since plaintiff failed to make a submissible case, it was proper for the trial court to sustain defendant's motion for judgment in accordance with its motion for a directed verdict filed at the close of all the evidence and to enter judgment for the defendant. Obviously, we need not consider the propriety of the court's action in alternatively sustaining the motion for new trial.

The judgment is affirmed.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.