Lawrence G. SILVER, Alpha Hawman, H. E. Hamann, and Harold Wright, Trustees in Charge of the Winding up of the Affairs of Stewartsville State Bank, a Former Corporation, Plaintiffs-Respondents,

v.

B. O. JOHNSON, Defendant-Appellant.

No. 23631.

Kansas City Court of Appeals.

Missouri.

Dec. 3, 1962.

Newhart & Zahnd, John W. Newhart, L. Glen Zahnd, Savannah, for appellant.

Miner & Martin, St. Joseph, Robison & Miller, Maysville, for respondents.

HUNTER, Presiding Judge.

This is a suit for the balance due on six promissory notes given in 1951 and March 1952, and for collection fees; brought by plaintiffs-respondents as Liquidating Trustees of the Stewartsville State Bank against defendant-appellant, B. O. Johnson who relied solely on the defense of payment.

Defendant asserted that on September 12, 1951, he made two payments in the sums of $1,028.03 and $957.93 respectively by checks drawn on the Stewartsville State Bank. If these two alleged payments were in fact made, the notes in question have been paid and defendant is entitled to a favorable judgment. If they were not made then the trial court's judgment against defendant for $3,202.40, principal and interest, and $320.24 attorneys' fees is to be affirmed.

The facts are interesting but somewhat frustrating for their failure to reveal what actually occurred in certain instances. According to defendant's testimony, on September 10, 1951, he sold some cattle to the Heady & Fannen Livestock Commission Company of St. Joseph for $2,583.92 and received from that company a blue credit ticket in that amount to be credited to him in his checking account at the Stewartsville State Bank. Defendant introduced

in evidence as his Exhibit E this blue slip with the explanation that as an employee of the mentioned Commission Company he knew it was their practice when a sale of cattle was made to issue in triplicate (blue, white and yellow) an account of sale of livestock slip and to give the blue copy to the seller. This particular blue slip stated: "September 10, 1951 * * * by direction and for use of Orville Johnson through Heady & Fannen Agent has deposited $2583.92 in —— for credit of Stewartsville State, Stewartsville, Mo." A portion provided: "Valid only when stamped by St. Joseph Bankers Joint agent." This portion was not stamped.

According to defendant the slip was eventually to give him $2,583.92 in credit in his account in the Stewartsville State Bank. However, for this to occur it was not only necessary for the sale of cattle to have been made but also for the commission company to deposit with the St. Joseph Stockyards Bank its check or cash in the amount of the sale price so that the Stockyards Bank would have that money or credit available for crediting to the account that the Stewartsville State Bank maintained in the Stockyards Bank.

The pertinent records of the Stockyards Bank were introduced in evidence. These records fail to show any deposit by the Heady & Fannen Livestock Company for the date of September 10, 1951; nor do they show any credit to the Stewartsville State Bank for that day. Under dates of September 11, and 12, 1952, there were credits to the Stewartsville State Bank but none were in the amount of $2,583.92. Nor was there any evidence to the effect the mentioned $2,583.92 which defendant claimed was owed him by the Commission Company was actually deposited with the Stockyards Bank. The pertinent records of the Stewartsville State Bank do not show that it received any credit in its account in the Stockyards Bank on September 10, 1951; nor credit on any other day that might belong to defendant.

Clemons Drag, the assistant cashier for the Stockyards Bank during the times in question, examined the mentioned blue credit ticket (Exhibit E) and was asked, "Q. You can't tell the court whether or not the seller of that livestock received the cash or the check himself or what happened to the money, can you? A. No, Sir."

Defendant testified that on September 12, 1951, he went to the Stewartsville State Bank, where he frequently did business and maintained a checking account; gave its cashier, Carl L. Hamann, two checks in the respective sums of $1,028.03 and $957.93 drawn on his checking account in that bank and instructed Hamann to apply them on the debt defendant had there. One check had on it the notation "note & int." and the other had the words "On note and interest". At that time the records of the bank showed defendant had only $101.76 in his account. These records also showed that neither of the two checks ($1,028.03 and $957.93) were charged against his account and that the balance in the account remained at $101.76. The note register book of the bank did not reflect these checks nor credit any sum to the payment account of the mentioned notes. Nor did the notes themselves reflect any payment resulting from these checks. There is no evidence of any specific agreement by the bank to accept the checks themselves as absolute payment of the debt. Nonetheless in an unexplained manner the two checks were stamped "Paid" and defendant received them back, probably at the end of the calendar year with his other cancelled checks for the year.

In December, 1952, defendant made what he testified he thought was his final payment on his notes. He stated that on December 30, 1952, he and his wife went to see Carl Hamann at the latter's home and there gave him a check for $2,000 that had been endorsed to defendant for a farm sale; that Mr. Hamann said this paid the notes in full "and if I had overpaid him that he would check on the notes." This $2,000

payment in due course was credited on the notes. He related that later Carl Hamann "agreed then that I had overpaid him" but that he is not now making any counterclaim for any overpayment. Nor has he ever been able to get possession of the notes sued on although he has tried to do so.

Defendant's position on this appeal is that the trial court erred in failing to credit his two checks of September 12, 1951, as payments on the notes for the reason that the bank accepted those two checks, marked them paid and treated them as an "absolute payment".

█ It is the general rule that the payee's mere receipt and acceptance of his debtor's check will not constitute payment of the debt in the absence of an express agreement to that effect, and without such an agreement or consent the debt is not discharged until the debt is in fact paid in due course. Komosa v. Monsanto Chemical Company, Mo.Sup., 317 S.W.2d 396, 402(10); Maryland Casualty Co. v. Dobbin, 232 Mo.App. 557, 108 S.W.2d 166(7); Skinner v. Johnson, Mo.App., 74 S.W.2d 71, 73(4). As stated by this court in the early case of Groomer v. McMillan, 143 Mo.App. 612, 128 S.W. 285, 286, "Accepting a check is not an agreement that it is itself a payment of the money named therein. * * * And is only payment when the money is received on it."

Our Supreme Court in Le Page v. Metropolitan Life Insurance Company, 314 S.W. 2d 735, 738, expressed it thusly: "It is a universal rule of law that in the absence of an agreement to the contrary, the delivery of a check to the creditor and his acceptance of it is not payment of the debt or obligation until the check has itself been paid, and that when the check is not paid, it may not be said to have constituted payment of the debt or obligation for which it was given." Further, the presumption is that the creditor has not taken the check in absolute payment, and the burden is on the debtor to prove by clear and cogent evidence that the check has been taken in absolute payment. Hickerson v. Con Frazier Buick Co., Mo.App., 264 S.W.2d 29; 70 C.J.S. Payment § 24, page 233.

█ In 40 Am.Jur., Payment, section 85, page 774–775, it is stated, "The presumption that a check or draft given in payment was intended merely as a conditional payment is not destroyed * * * by the act of the bank upon which the check or draft was drawn in charging it to the drawer's account or stamping it as paid, if it is not in fact paid." See, also, 9 C.J.S. Banks and Banking § 343, page 690. It is for this reason a check is often referred to as a conditional payment, the condition being its collectibility from the bank on which it is drawn. 70 C.J.S. Payment § 24, p. 236. It is on fulfillment of the condition by payment of the check that that which was conditional becomes absolute.

█ The defense of payment, upon which defendant relies is an affirmative defense. Civil Rule 55.10, V.A.M.R. Defendant contends the act of the Stewartsville State Bank in receiving the two checks of September 12, 1951, in some way, causing or permitting them to be stamped paid and in retaining them with defendant's other cancelled checks until defendant picked them all up about the end of the year is proof that the checks were an absolute payment.

Viewed in the light of the above quoted and cited authorities defendant's contention is not meritorious. At the time defendant delivered the two checks totaling $1,985.96 to the bank to be applied on his notes there was only $101.76 in his account. He has failed to prove that the Stewartsville State Bank, or for that matter the Stockyards Bank, had received any additional money or credit that belonged to him. His bank balance was greatly insufficient to meet either of the two checks he gave on September 12, 1951. Under such circumstances there was no duty on the bank to

debit his account in any amount or to credit his notes or note account with any payment. 7 Am.Jur., Banks, section 539, page 391; Annotation, 126 A.L.R. 208; 9 C.J.S. Banks and Banking § 342c, page 687. The evidence discloses that the bank did not debit or charge his account or credit his notes or note account with any payment. Why or how the two checks were marked "paid" is unknown but this is not controlling in view of the fact the two checks actually were not "paid".

Defendant has failed to carry his burden of proof of payment made. On the contrary, the evidence is persuasive that no payment was made. The trial court did not err in so finding and in rendering its judgment accordingly.

The judgment is affirmed.

All concur.