In the ESTATE OF Katherine L. NELSON; Karen Lynn Quisenberry, Respondents,

v.

MISSOURI DEPARTMENT OF SOCIAL SERVICES, MO HEALTHNET DIVISION, Appellant.

No. WD 73957.

Missouri Court of Appeals, Western District.

March 20, 2012.

Jeff Klusmeier, Jefferson City, MO, for appellant.

Cynthia A. Barchet, Columbia, MO, for respondent.

Before: LISA WHITE HARDWICK, C.J., ALOK AHUJA, J. and JON E. BEETEM, Sp. J.

Alok Ahuja, Judge.

The MO HealthNet Division of the Missouri Department of Social Services appeals the circuit court's judgment denying its claim against the Estate of Katherine Nelson. The State's claim sought reimbursement of Medicaid assistance funds that it allegedly expended on Nelson's behalf during her lifetime. The State contends that the MO HealthNet computerized records that were admitted in evidence, together with the explanatory testimony of a MO HealthNet Cost Recovery Analyst, constituted sufficient evidence to support the allowance of its claim. We disagree, and affirm.

**Factual Background**

Katherine Nelson died on January 16, 2010. From 2002 until the time of her

death, the State claims to have expended money for her medical care under the Medicaid program. On November 23, 2010, the State filed a claim against Nelson's estate for $18,132.87.

At an evidentiary hearing, the State produced printouts of computer records detailing the expenditures made on Nelson's behalf, and also offered testimony as to the meaning of the printouts from a Cost Recovery Analyst with the Division.[1] The Estate offered no evidence.

At the conclusion of the hearing, the circuit court ruled from the bench that the State had failed to establish the necessary elements of its claim. A subsequent docket entry confirmed this ruling. The State appeals.

## Standard of Review

Review of this case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We will affirm the circuit court's judgment unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

*Wright v. State*, 344 S.W.3d 743, 745 (Mo. App. W.D.2011).

## Analysis

The State argues that the circuit court erred in denying its claim because it met its burden of proof by presenting unrebutted evidence that it had expended moneys on Nelson's behalf. We disagree.

The circuit court's ruling presents a legal question which we review *de novo*. The circuit court did not deny the State's claim based on a factual evaluation of the credibility or persuasiveness of the State's evidence. Instead, the court denied the claim based on its legal conclusion that, to establish an allowable Medicaid reimbursement claim, the State was required to prove that any checks it had issued to health-care providers for Nelson's medical care had in fact been presented and paid. The trial court explained that, under its reading of this Court's decision in *Wright v. State*, 344 S.W.3d 743 (Mo.App. W.D. 2011), "it's just not enough that Medicaid writes the check, that there has to be some indication that money was actually paid.... Paid meaning the check cashed and cleared the bank." "I do not believe, as I read [*Wright* ], that the mailbox rule [*i.e.*, proof that a check was mailed] satisfies the claim here that money was paid." The court rejected the State's contention that, absent contrary evidence, it should presume that any issued check was in fact presented and honored:

> [A]s the law exists today I don't see anything that indicates to me ... that any claim that the money wasn't paid or the check wasn't delivered or the check wasn't cashed ... the burden shifts to the people contesting the claim. I just don't see it. So I'm going to show the claim as denied.

The court then observed that, "if [the State was] right, ... I just made a clear mistake of law, which ... the Court of Appeals should correct ... if I'm wrong here."

Resolution of this case turns on the interpretation of § 473.398,[2] which provides in relevant part:

---

1. The State also offered testimony of a Medicaid Unit Supervisor as to the manner in which the Medicaid "spend-down" operated for persons in Nelson's financial position. That testimony does not address the issues on appeal.

2. Unless otherwise indicated, statutory citations refer to the 2000 edition of the Revised Statutes of Missouri, as updated through the 2011 Cumulative Supplement.

1. Upon the death of a person ... who has had moneys expended on his behalf by the ... department of social services, ... the total amount ... expended upon his behalf after January 1, 1978, shall be a debt due the state ... from the estate of the decedent. The debt shall be collected as provided by the probate code of Missouri, chapters 472, 473, 474 and 475, RSMo.

. . . .

4. Claims consisting of moneys paid on the behalf of a participant as defined in 42 U.S.C. 1396 shall be allowed ... upon the showing by the claimant of proof of moneys expended. Such proof may include but is not limited to the following items which are deemed to be competent and substantial evidence of payment:

    (1) Computerized records maintained by any governmental entity ... of a request for payment for services rendered to the participant; and

    (2) The certified statement of the treasurer or his designee that the payment was made.

In *Wright,* we held that the plain meaning of § 473.398.4 requires the State to prove two essential elements to establish an allowable reimbursement claim: "[1] proof of what providers billed and [2] proof that payment was made." 344 S.W.3d at 748. We explained that, while § 473.398.4 does not require the State to use the specific methods of proof identified there, the State must submit *some* evidence proving each of the elements to which §§ 473.398.4(1) and (2) are addressed: a request for payment, and payment made.

Looking at the language of section 473.398.4, we note that the legislature says in the first sentence that a claimant, in this case, the State, is entitled to recover Medicaid benefits from an estate upon a showing of "proof of moneys expended." In the second sentence, the legislature provides guidance as to what constitutes sufficient "proof of moneys expended." § 473.398.4. Specifically, the legislature says that such proof "may include but is not limited to" the items listed in subdivisions (1) and (2), and these items "are deemed to be competent and substantial evidence of payment." *Id.* ...

Pursuant to the plain and ordinary meaning of the language in the second sentence of section 473.398.4, to prove moneys expended on a decedent's behalf, a claimant may present computerized records showing a request for payment and a certified statement showing payment was made. We interpret the phrase "[s]uch proof may include but is not limited to" to mean that these items of documentary evidence are not the exclusive way for a claimant to prove moneys expended, but that other forms of evidence—such as testimony or other documents—showing a request for payment for services rendered and certifying that payment was made are also sufficient.

*Id.* at 746.[3]

The State focuses on the first sentence of § 473.398.4, and argues that it need only establish a single element: that "moneys [were] expended." This ignores the second sentence of § 473.398.4, however, and *Wright*'s conclusion that the second sentence "provides guidance as to what constitutes sufficient 'proof of moneys expended.'" 344 S.W.3d at 746. The State's argument also ignores language in the first sentence of § 473.398.4 itself, namely, that the State may only assert claims for "moneys paid on the behalf of a participant." This phrase plainly contemplates actual

---

**3.** We came to the identical conclusion in the companion case of *Strayer v. State,* 339 S.W.3d 621, 624–25 (Mo.App. W.D.2011), handed down simultaneously with *Wright.*

payment (as does the word "expended"[4]). And the requirement that moneys have been paid "on behalf of a participant" suggests the need for some proof that payment was made to satisfy a third party's demand, based on services provided to the participant.

The State argues that *Wright*'s discussion of the elements of a *prima facie* showing is *dictum,* and need not be followed. As the State correctly notes, *Wright* held that the denial of the State's claim could be affirmed based on the trial court's "prerogative to believe or disbelieve the State's evidence even though the Estate presented no contrary evidence." 344 S.W.3d at 746. Given *Wright*'s conclusion that the trial court had simply disbelieved the State's evidence, and that this disbelief did not constitute reversible error, the opinion's discussion of the elements of a *prima facie* claim was not strictly necessary to the disposition of the appeal. That discussion was plainly an alternate ground for our affirmance in *Wright,* however, and we are bound by it. Although generally "[s]tatements ... are obiter dicta [if] they [are] not essential to the court's decision of the issue before it," *Brooks v. City of Sugar Creek,* 340 S.W.3d 201, 212 (Mo.App. W.D.2011) (citation and internal quotation marks omitted), "when a court bases its decision on two distinct grounds, each is as authoritative as the other and neither is obiter dictum." *Jones v. Ladriere,* 108 S.W.3d 736, 739 n. 2 (Mo.App.E.D.2003); *cf. Self v. Midwest Orthopedics Foot & Ankle, P.C.,* 272 S.W.3d 364, 367 (Mo.App. W.D.2008).

The State also argues that *Wright* is not controlling because in this case the State did not seek to use the "safe harbor" provided by §§ 473.398.4(1) and (2). But the same was true in *Wright:* the State in that case did not introduce the statement of the Treasurer specified in § 473.398.4(2). Whether the State chooses to employ the methods of proof specified in §§ 473.398.4(1) and (2) or not, *Wright* held that it must produce equivalent evidence in order to make out a *prima facie* case.

Here, the trial court found that the State had failed to present evidence satisfying the second element—that "the payment was made," § 473.398.4(2)—because it presented no evidence that any check that it issued to a health care provider was "cashed and cleared the bank." Although this ruling put the matter squarely in issue, the State does not directly challenge the circuit court's conclusion that evidence must be presented that a check was in fact honored in order to show that "the payment was made." The State's failure to challenge this legal conclusion is sufficient reason to affirm it. *See, e.g., Chastain v. Kansas City Mo. City Clerk,* 337 S.W.3d 149, 155 (Mo.App. W.D.2011) (citing *City of Peculiar v. Hunt Martin Materials, LLC,* 274 S.W.3d 588, 591 (Mo.App. W.D. 2009)).

Although unchallenged, we gratuitously observe that the trial court's ruling appears to be consistent with the common law concerning payment of obligations by check. In the trial court, the State argued (without citation to legal authority) that, "[a]bsent any evidence to the contrary," the fact that a check was issued and mailed to the payee was sufficient to support a finding that "the payment was made." While this position may be sensible, it appears to be contrary to well-established Missouri caselaw.[5] Based on

---

**4.** *See* WEBSTER'S THIRD NEW INT'L DICTIONARY at 799 (unabridged ed.1993) (defining "expend" as "to pay out or distribute: SPEND").

**5.** Cases interpreting the term "payment" are appropriate guides to the meaning of

§ 473.398.4(2)'s requirement of evidence "that the payment was made." *Citizens Elec. Corp. v. Dir. of Dep't of Revenue,* 766 S.W.2d 450, 452 (Mo. banc 1989) ("When the legislature enacts a statute referring to terms which have had other judicial or legislative meaning

our independent research, the general principle appears to be that in "[i]n absence of agreement to the contrary, delivery of a check to a creditor and his acceptance of it is not payment of the debt or obligation until the check has itself been paid, and when the check is not paid, it may not be said to have constituted payment of the debt or obligation for which given." *Bartleman v. Humphrey*, 441 S.W.2d 335, 342 (Mo.1969).[6] It does not appear that Missouri's adoption of the Uniform Commercial Code altered this common-law rule.[7] Given this caselaw, and absent any contrary argument by the State, we perceive no obvious basis to reject the trial court's legal conclusion that, to establish that "the payment was made," the State was required to show that "the check [was] cashed and cleared the bank." [8]

Judged by this standard, the State's evidence was insufficient, because it failed to establish that the checks it issued in payment of Nelson's health-care services were either presented or honored. The computerized records admitted into evidence, as explained in the testimony of a MO HealthNet Cost Recovery Analyst, provide general descriptions of the services performed for Nelson, the dates of service, the identity of the provider, the allowed

---

attached to them, the legislature is presumed to have acted with knowledge of that judicial or legislative action."); *Hoffman v. Van Pak Corp.*, 16 S.W.3d 684, 688 (Mo.App. E.D. 2000) ("we presume that the legislature acted with knowledge of any prior judicial construction of the term").

6. *See also, e.g., Komosa v. Monsanto Chem. Co.*, 317 S.W.2d 396, 402 (Mo. banc 1958), overruled on other grounds; *Martin v. Mid–Am. Farm Lines, Inc.*, 769 S.W.2d 105, 112 n. 13 (Mo. banc 1989); *Le Page v. Metro. Life Ins. Co.*, 314 S.W.2d 735, 738–39 (Mo.1958); *G.F.C. Corp. v. Nesser*, 273 S.W.2d 264, 267–68 (Mo.1954); *Walters Auto Body Shop, Inc. v. Farmers Ins. Co.*, 829 S.W.2d 637, 641 (Mo. App. W.D.1992); *Klosterman v. Est. of Lanning*, 753 S.W.2d 952, 954 (Mo.App. E.D. 1988); *In re Midwest Boiler & Erectors, Inc.*, 54 B.R. 793, 795 (Bankr.W.D.Mo.1985) (Missouri law; "The general rule is that acceptance of a note, bill or check does not constitute payment of an underlying debt.... It is not delivery of the check, but rather its payment by the drawee bank which constitutes payment of the debt." (citations omitted)).

Certain cases suggest that payment may also be established where the payee unreasonably delays in presenting a check for payment, or where the evidence establishes that the drawer had sufficient funds in the relevant account to cover payment of the check, and the check was drawn on a financial institution in a position to honor it. *See, e.g., Le Page*, 314 S.W.2d at 739; *Walters Auto Body*, 829 S.W.2d at 641; *Gill v. Mercantile Trust Co.*, 347 S.W.2d 420, 424 (Mo.App.1961), quoted in *Security Trust Co. v. Sherwood Homes, Inc.*, 436 S.W.2d 776, 778–79 (Mo. App.1968). No such evidence was presented here.

7. *See Wallace Cotton Co. v. Est. of Wallace*, 722 S.W.2d 103, 106, 106 n. 6 (Mo.App. S.D. 1986); *see generally Mitchell v. Residential Funding Corp.*, 334 S.W.3d 477, 504 (Mo.App. W.D.2010) ("The UCC does not act to the exclusion of the common law absent an express provision within the UCC. The Code itself provides that '[u]nless displaced by the particular provisions of this chapter, the principles of law and equity ... shall supplement its provisions.' § 400.1–103.").

8. Although not directed to the issue of when "payment" is "made," the State's briefing cites numerous prior Medicaid reimbursement cases in which its evidence was found to be sufficient. *Est. of Graham*, 59 S.W.3d 15 (Mo.App. W.D.2001); *Est. of Newman*, 58 S.W.3d 640 (Mo.App. W.D.2001); *Est. of Vickers*, 35 S.W.3d 851 (Mo.App. S.D.2001); *Est. of West v. Moffatt*, 32 S.W.3d 648 (Mo. App. W.D.2000); *Pierce v. State, Dep't of Soc. Servs.*, 969 S.W.2d 814 (Mo.App. W.D.1998); *Dept. of Soc. Servs. v. Ragsdale*, 934 S.W.2d 322 (Mo.App. E.D.1996). None of these cases decided the issue presented here, however, and in many of those cases, it is not possible to determine the precise nature of the evidence presented by the State to support its claim.

reimbursement amount, and the date on which a check was issued (and its number). The Cost Recovery Analyst acknowledged, however, that she had no knowledge as to whether the checks issued to providers were in fact cashed; she agreed with the Conservator *Ad Litem* that "what you can testify to is that the State of Missouri wrote checks to these providers in certain amounts, but what happened beyond that is unknown to you." Indeed, in its legal argument to the court, the State's attorney himself asserted that "the testimony before you is that these amounts were paid, that checks were created and issued and sent to the providers. That is the only evidence before you. . . . The only evidence is that these checks were sent." This evidence was insufficient to establish that "the payment was made" under the trial court's test.

### Conclusion

The circuit court's judgment is affirmed.

All concur.